CASE 64—INDICTMENT—MARCH 26..

# Campbell v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

HOMICIDE—RIGHT OF FATHER TO PROTECT DAUGHTER FROM HUSBAND'S ASSAULTS—INSTRUCTIONS AS TO MANSLAUGHTER.—A father being informed, for the second time on the same day, that his daughter was being abused by her husband, seized his pistol and went to the residence of his son-in-law, about three squares distant, and there found, at night, his daughter and her children in the streets, driven from their home; and after some words had passed between him and his daughter's husband, he fired at the husband, the shot causing death.   Upon the trial of the father for murder, *Held*—

1. For the purpose of showing the good faith of the father in going to the rescue of his daughter, it was competent to show the previous bad treatment of the daughter by her husband; but enough being proved to show that she was in constant danger of bodily harm, the fact that proof of other acts of violence was excluded is not ground for reversal..

Campbell v. Commonwealth.

2. It is not necessary that a blow should be given or a trespass committed on the person of the accused in such a case to reduce the crime from murder to manslaughter; and, therefore, it was error to give the ordinary instruction as to manslaughter. (See opinion for instruction which should have been given.)

3. The father had a right to protect the person of the daughter from great bodily harm, even against the assault and battery of the husband, and the jury should have been so instructed as a matter of law.

4. The court erred in instructing the jury that the accused could not be acquitted on the ground of self-defense if "by his own wrongful act he made the harm or danger to himself necessary or excusable" on the part of the deceased, as the jury may have considered that the accused was guilty of a wrongful act in going to the house of his daughter to protect her, there being no other act to which the instruction could have referred.

5. Although the jury found the defendant guilty of manslaughter only, thus disregarding the instructions of the court, under which they must have found the defendant guilty of murder or have acquitted him, this court can not say that a proper instruction as to manslaughter would not have lessened the punishment.

6. It was competent for the defendant, upon the issue of self-defense, to prove threats of the deceased against him and previous efforts by the deceased to take his life.

F. HAGAN for appellant.

1. The beating and cruel treatment of one's child may cause under the law such a heat of passion as to reduce a homicide to manslaughter. (12 Coke, 87; 1 Hawk., 125; 2 Croke, 296; 1 Hale, 453; 1 East, 237; 1 Blackstone, 449; Rey v. Harrington, 10 Cox, C. C. 370; Nicholas v. Commonwealth, 11 Bush, 586; Guffee v. State, 8 Tex. Appeal; Biggs v. State, Hourigan, 749; Oliver v. State, 17 Ala., 507; Hill v. State, 5 Texas Appeal, 2; Cheek v. State, 35 Ind., 492; Waywright v. The State, 56 Ind., 122; Mehler· v. People, 81 Am. Dec., 781; State v. Dunn (Mo.), 3 S. W. Rep., 219; Patten v. People, 18 Mich., 318.)

2. The court should have instructed the jury on the whole law applicable to the case. (Criminal Code, section 225; Payne v. Commonwealth, 1 Met., 373; Blim v. Commonwealth, 7 Bush, 321; Brady v. Commonwealth, 11 Bush, 282; Trimble v. Commonwealth, 78 Ky., 176; Hopkins v. The People, 18 Ill., 264; State v. Benham, 23 Iowa, 154; 18 Ga., 194.) .

3. There are two classes of persons and situations in the law of self-defense. In the one there must be an overt act or demonstration sufficient to cause the defendant to believe he is in imminent danger of bodily harm , while in the other there need not necessarily be a demonstration

Campbell v. Commonwealth.

or overt act, provided the adversary has made threats, attempted to kill defendant, carries weapons, has assaulted defendant, and is a dangerous, reckless man. The instructions in this case should have embraced both classes of cases, but in fact embraced neither. (People v. Scroggins, 37 Cal., 677; Johnson v. State, 27 Texas, 758; Pritchett v. The State, 22 Ala., 39; Rippy v. The State, 2 Head, 217; Williams v. The State, 3 Heisk, 376; Schnier v. The People, 23 Ill., 289; Meredith v. Commonwealth, 18 B. Mon., 49; Rapp v. Commonwealth, 14 B. Mon., 614; Holloway v. Commonwealth, 11 Bush, 345; Blim v. Commonwealth, 7 Bush, 327; Phillips v. Commonwealth, 2 Duv., 328; 7 Bush, 124; Bohannon v. Commonwealth, 8 Bush, 482; Oder v. Commonwealth, 80 Ky., 32; Hourigan, 405; Jackson v. State, Hourigan, 476.)

4. The instruction to the jury that the defendant had no right to act in self-defense if he "made the danger to himself," was misleading. (Terrell v. Commonwealth, 13 Bush, 246; Smaltz v. Commonwealth, 8 Bush, 32.)

5. The court erred in excluding evidence of information to appellant of the beating of his daughter by her husband, the deceased. (35 Ind., 492; Stephens, 19, 6; Sanchey v. People, 22 N. Y., 147.)

FRANK PARSONS, COMMONWEALTH'S ATTORNEY, FOR APPELLEE.

1. The facts to which the rejected testimony related were not a part of the *res gestæ*, and were not competent evidence.

2. The court will not reverse a judgment or a verdict of a jury on the ground of rejected evidence, even though it were competent, unless it is important for the defendant in view of the whole case as presented. (Champ v. Commonwealth, 2 Met., 17.)

3. The court should not give instructions which emphasize certain facts; nor should an attempt be made to enumerate collateral facts which the evidence tended to prove. (Williams v. Commonwealth, 9 Bush, 274; Elswick v. Commonwealth, 13 Bush, 155; Coffman v. Commonwealth, 10 Bush, 495.)

4. Mere words, or gestures, do not constitute such provocation as will reduce to manslaughter a homicide committed with a deadly weapon. (Rapp v. Commonwealth, 14 B. M., 614.)

5. In determining the correctness of the instructions they must be considered as a whole.

6. Instructions should be based upon the evidence, and under an indictment for murder instructions as to other degrees of the offense should not be given unless the evidence warrants it. (York v. Commonwealth, 82 Ky., 360; Mitchell v. Commonwealth, 78 Ky., 219.)

ALPHEUS BAKER ON SAME SIDE.

1. Mere words can not reduce from murder to manslaughter a killing done with a deadly weapon. (Rapp v. Commonwealth, 14 B. M., 620.)

No *provocation* whatever can render a homicide justifiable or even excusable, The least it can amount to is manslaughter. (Wharton's Am. Crim. Law, p. 234.)

2. The principle that a parent is justified in an assault and battery in defense of the person of his child has no application to the facts of this case, as there was at the time of the killing no necessity for the defendant to shoot in order to defend his daughter.

   There is no analogy between the facts of this case and those in Rowley's case, 12 Rep., 87, and 1 Hale, 453. (Russell on Crimes, vol. 1, p. 518; Cro. Jac., 296; Godb. Rep., 182; Foster, 294.)

3. In no case is a person allowed to hunt down or seek another for the purpose of killing him. (Oder v. Commonwealth, 80 Ky., 32.)

4. Under the circumstances of this case the defendant was guilty of murder. (Norman v. State (Texas), S. W. Rep., Dec. 10, 1888, p. 606.)

   The cases of Guffee v. State, 8 Tex. Ap., and Biggs v. State (Ga.), 7 Hourigan, 750, commented on.

5. The court in no respect violated the rule laid down in Payne v. Commonwealth, 1 Met., 373, with respect to the provocation that would reduce the offense from murder to manslaughter,

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, Peter Campbell, was indicted by the grand jury of Jefferson county for the murder of his son-in-law, Michael Eady, the trial resulting in a verdict of manslaughter, with the punishment fixed at confinement in the State prison for the period of ten years. The deceased and the daughter of the accused had been married about five years, and, from the testimony in the case, it was not long after the marriage before his conduct toward his wife became cruel and inhuman. His blows upon her person caused the premature birth of a child. She was driven from his home at midnight with her two infant children, or her presence sought by the police of the city at that hour upon a warrant issued at the instance of the husband, and the policeman, instead of giving her shelter in the station-house, carried her to the house of her father. At other times she sought shelter

in the outhouses near their residence, or in the cabins of the humblest negroes in the vicinity—was abused and beaten in public by the husband, and denounced as a street-walker and common prostitute in the presence and hearing of her neighbors. This cruel treatment of the daughter was brought home to the father, who has been convicted in this case, and he remonstrated time and again with his son-in-law for this brutal conduct, resulting in widening the breach between them and causing the deceased at one time to attempt to take the life of the accused by shooting him with a pistol, and was prevented by parties present from firing. On the Saturday night preceding the difficulty in which Eady lost his life, the deceased had driven his wife from her home to her father's, and on the next day (Sunday) the deceased went to the home of the accused, with pistol in hand, threatening to kill him, and was prevented from executing his threat by the wife of the accused closing the door and hiding her husband from his sight. The deceased, from the evidence before us, had an unnatural aversion to both his wife and her father, and this passion, fed and inflamed by the constant use of intoxicating drinks, kept the wife in constant danger of his brutal assaults, that seemed to increase as their married life progressed.

Such is, in substance, the history of these domestic troubles and the connection of the accused with them up to the 31st of May, about nine o'clock at night, when the accused fired the shot that ended his son-in-law's life.

The accused was told about four o'clock in the evening of that day that the deceased was abusing his daughter, and at eight o'clock another messenger arrived, informing

him of what was transpiring. He lived about three squares distant from the residence of his son-in-law, and on receiving the last information seized his pistol and hurried to the residence of the deceased and there found his daughter and her children, at night, in the streets, driven from their home; and on meeting his daughter's husband, after some words had passed, according to the theory of the Commonwealth, fired at the deceased as he was leaving him, but, from the weight of the evidence, when he was fronting him, the shot producing death. The theory of the defense is based on the testimony of the accused and another, who state that when they met, Eady cursed and abused the appellant, and made a motion with his hand behind him as if to draw a pistol, when the appellant fired; and in this the accused is corroborated by an eye-witness, who says he saw the pistol on the deceased at the time. Other persons, several in number, heard words pass between the accused and the deceased, but did not understand what was said, and their statements conducing to show, also, that the deceased was making no demonstration when he was shot, but in a defenseless condition.

This is in substance the testimony heard on the trial. The grounds for a reversal of the judgment of conviction arise from the instructions given by the court, and in refusing to permit evidence of the various assaults and batteries made upon the wife by the husband during their married life, with a view of showing the *bona fides* of the father in leaving his home on the night of the killing with pistol in hand, and going to the rescue of his daughter. It seems to us, from the uncontradicted

proof in the case, that there was evidence sufficient to satisfy any reasonable mind that the apprehension by the father of his daughter's danger alone prompted him to go to the home of the deceased on the night of the killing.  Threats had been made from time to time against the accused by his son-in-law by reason of his having interfered for the protection of his daughter, and the entire circumstances and acts transpiring, from which these threats originated, were permitted to go to the jury with a view of sustaining the plea of self-defense by the accused and his purpose in leaving his home on the evening of the killing.  The details of the treatment of the daughter by her husband, as stated by these witnesses, placed before the jury the real facts of the case and left no room to question the good faith of the father in the effort to protect his daughter.  Other acts of personal violence than those admitted were excluded, but enough was admitted showing that the wife was in constant danger of bodily harm; and, therefore, this court could not well have reversed this case for the reason alone that this evidence was excluded.  To have permitted such an investigation would have prolonged the trial and shed no light upon the issue between the Commonwealth and the accused.

At the time of the shooting the daughter was not in imminent peril.  The trouble had just ended and the daughter and her children on the street when the accused reached the ground, and, therefore, there was no reason for permitting these threats against the accused or the assault and batteries of the wife to go to the jury in support of the proposition that the father shot his son-in-law

to save the life of his daughter.   The previous bad treatment of the wife would not justify the accused in taking Eady's life, but it would be competent, as already indicated, to show the lawful purpose of the accused in going to the place of the tragedy.

The threats of the deceased to take the life of the accused, accompanied by an effort to do so, such as the attempt to draw his pistol, would, of course, be competent on the issue of the defense of the person of the accused at the time he shot.   The surrender of all parental control in confiding to the deceased the care and custody of his daughter did not lessen the love of the father for his child, but seems to have created new ties of affection in the birth of two children, that made her the more the object of his love than when she left the parental roof; and, having a knowledge of such cruel treatment as not only destroyed her happiness, but endangered her life, it was his natural and legal right to go to the rescue of his daughter, to prevent the infliction upon her person of cruel and inhuman blows.   Having the right to go to the premises of the deceased for this lawful purpose, he had the right to defend his own person, whilst there, from bodily injury.

The objection to the manslaughter instruction is that it only follows the law as in ordinary cases of homicide, the jury being told that " if the killing was in a sudden affray, or in sudden heat and passion, produced by considerable provocation, such as a blow, an actual trespass to his person, then the jury should only find the accused guilty of voluntary manslaughter, and fix his punishment at confinement in the State prison for a term not less than two nor more than twenty years."   It loses sight of the

relation of these parties, and the right of the father to protect his child from the personal violence of the husband, and to go even on his premises for that purpose; and when considering the instruction in regard to self-defense, this error becomes still more apparent.

In this case there was no blow or trespass to the person, but from the testimony on the part of the State, the killing by the father was under the influence of sudden heat and passion, in the effort made, in good faith, to protect his daughter against the assaults of her husband. It is not necessary that a blow should be given, or a trespass committed on the person of the accused, in a case like this, to reduce the crime from murder to manslaughter. The true test is: "Whether the law deems the provocation calculated to excite the passions beyond control; if so, it reduces the offense from murder to manslaughter." (Bishop on Criminal Law, page 711.) It is difficult to establish any rule, defining the crime of manslaughter, that will apply to every state of case, and hence the necessity of placing before the jury, in such a case as we have here, the right of the father to protect his child; for, if a stranger had appeared upon the street, and taken the life of the deceased, not in self-defense, the crime could not be reduced to manslaughter upon the idea that he was provoked to take the life of the deceased because of the story of the wrongs perpetrated on the injured woman; nor could the father, unless impelled by passion created at the instant of time, have the offense reduced to manslaughter; but the law, in its wisdom, looking to the frailty of human nature, and the passions common to all men, where there is a

.sufficient provocation, will punish for the lesser offense; but, as said by Christiancy, Justice, in the case of Maher v. The People, 10 Mich., 212 (81 Amer. Dec., 785), " provocations will be given without reference to any previous model, and the passions they excite will not consult precedent."

Whether there has been time for the passions to sub-.side, and the better judgment to prevail, must necessarily depend on the facts of the particular case. The father had long listened to the details of his daughter's wrongs; he knew that her life was endangered; that his own life had been threatened; and, meeting her husband at the moment when the daughter and children had been turned into the street, with angry words passing between them, he fired the fatal shot, it was, if in the absence of malice, under great provocation, and such as lessened the punishment, if there had been an absence of all proof as to self-defense. If a heinous offense should be committed on the person of a man's wife or his daughter, as said in the case referred to, the passion would hardly subside as .soon as in the case of a sudden quarrel. All such questions are necessarily under the control of the court, and to be determined when evidence is offered in mitigation of the offense. Lord Hale states a case like this: A, the son of B, and C, the son of D, fall out and fight; A is beaten and runs home to his father, all bloody; B takes his staff, runs to the field three-quarters of a mile off, and strikes C that he dies. It was held not murder in B, but sudden heat and passion. East and Blackstone both cite this case; and while some of the elementary writers criticise this illustration of the rule, by

saying that the blow was inflicted by a weapon not likely to produce death, it still serves to show the view taken of the question by the earlier writers on criminal law, and whether that decision turned upon the one question or the other is immaterial in determining the question presented here.

In this case, the jury returned a verdict of manslaughter, and it is, therefore, maintained that no error existed by reason of the failure of the court to instruct the jury as to the right of the parent to protect the child. It is impossible to say what effect a proper instruction as to manslaughter would have had on the minds of the jury as to the duration of the punishment for the crime of which the accused was found guilty. It is manifest that under the instructions given, the appellant was either guilty of murder or entitled to an acquittal on the ground of self-defense; and if the question of provocation caused by the beating of appellant's daughter had been inserted in the instruction, the verdict as to the term of punishment might, and doubtless would, have been lessened. The jury should have been told, as a matter of law, that the father had the right to protect the person of his daughter from great bodily harm, even against the assault and battery of the husband; and, further, that if they believed, from the testimony, the daughter of the accused prior to the day on which the deceased lost his life had been assaulted and beaten by her husband so as to endanger her life, or he had inflicted upon her person great bodily injury, and that the accused was apprised of that fact, and if they further believed that the assault and beating of the wife was renewed on the night of the

31st of May, and that he was informed of that fact, the accused had the right to arm himself and go to the residence of the deceased to protect his daughter from the personal violence of the husband; and if, on reaching the place of trouble, he found his daughter and her children expelled from their home into the street by the deceased, and suddenly meeting with the deceased, in sudden heat and passion caused by the beating and ill-treatment of the wife from the appearances then surrounding them, shot the deceased when not in necessary self-defense and without malice, he is guilty of manslaughter.

In ordinary cases of homicide, where the party kills when there is no reasonable ground for belief on his part of immediate danger of great bodily harm, the offense is murder. Not so when the husband pursues the adulterer and takes his life before there is time for his passion to subside, or the father flying to the relief of the child whose life has been endangered by the repeated cruelty of the husband. In all such cases the parent exercises no greater right than nature has assigned to the beasts of the field, that prompts them to fly to their offspring when in danger of bodily harm.

The error in failing to give such an instruction as the one indicated becomes the more apparent when considering the qualification annexed to the instruction in regard to self-defense. That qualification reads: " Unless by " his own wrongful act he made the harm or danger to " himself necessary or excusable on the part of said Eady." What wrongful act had been committed by the accused is not developed by the testimony, unless it consisted in his going to the home of his daughter in order to protect

her. The jury may have so considered it and treated this case with no greater right on the part of the father to interfere for the protection of the daughter than if he had been an entire stranger to both the wife and husband. This qualification should be eliminated from the instruction, and while the jury, in the exercise of a humane feeling, have by their verdict lessened the rigor of the law as expounded by the court, nevertheless the appellant was entitled to have considered by the jury his rights as parent and the provocation that prompted him in the endeavor to protect his daughter from the cruel assaults of her husband.

The judgment is therefore reversed and cause remanded, with directions to award the appellant a new trial, and for proceedings consistent with this opinion.