Statement of the Case.
NICHOLLS, C. J.
Defendant was indicted for the murder of one William Jones. On the trial of his case, the jury returned against him a verdict of guilty as charged, without capital punishment. He was sentenced to imprisonment at hard labor in the State Penitentiary for life. He appealed.
We find a number of bills of exception in the record, but counsel rely for a reversal upon the complaint set out in the fifth and eighth bills of exception.
The fifth bill recites that the defendant offered himself to pi'ove that on the night of the homicide, about 20 minutes before it, he was told by his daughter that the deceased had committed an outrage on her person the previous Sunday evening, two days before the homicide, and that this was the first time he had ever seen his daughter after the outrage complained of; to the admission of which statement in evidence, counsel for the state objected as immaterial, incompetent, and irrelevant, and not justifying or excusing the homicide. One Eugene Williams, the only eyewitness, had testified that he and the deceased and defendant were riding home from the primary election held Tuesday, October 20, 1903, at about 8 o’clock at night; that when about a quarter of a mile from the precinct the defendant, Cooper, rode ahead of the other parties, and in a short time — about 30 minutes — he returned, and met the deceased and state witness Williams, and Cooper then had a gun; which he did not have when he left them, and that he presented his gun at deceased, and said, “You have done me enough,” and deceased said, “What have I done to you, Mr. Cooper?” that defendant said, “You have done me a plenty, and 1 would as soon kill you and go to hell as not.” Deceased then said, “You have the advantage of me, Mr. Cooper. Give me a show for my life.” The defendant then fired, and the deceased fell *283 from his horse. The witness’ horse ran away with him, and defendant rode off. The deceased was found hy the witness at the spot where he was shot, with his brains shot out. Under this testimony the district judge sustained the objection, assigning as his reason that such testimony did not justify or excuse the homicide.
The eighth bill recites that, on the trial, counsel offered the daughter of the accused as a witness, and, being asked by the district attorney the object and purpose of her testimony, stated that “he intended to prove and could prove by her that she was the daughter of the accused; that on a .Sunday evening preceding the homicide the deceased, Willie Jones, came to her house- and committed a rape upon her person by force and violence; that the first opportunity she had of informing her father, the accused, of the occurrence, was on Tuesday night, the night of the homicide, some 15 or 20 minutes 'before the killing, at her house, near the place of the killing, when she did inform her father; that he immediately left the , house, and shortly afterwards returned and informed her he had killed the deceased; that, on objection made by the district attorney to allowing her testimony on the same grounds as had been assigned by him to the admission of her father’s testimony, the court sustained the objections, assigning as his reason that such testimony did not justify or excuse the homicide.”
Opinion.
In the brief of counsel for the accused, they say: “The evidence was not admissible for the purpose of justifying or excusing the homicide, but they submitted that it was admissible for the purpose of showing such provocation as would reduce the killing- from murder to manslaughter.” Counsel for the defendant contend that the court should have permitted the evidence to be introduced, subject to subsequent instructions from the court; that it should be left to the decision of the jury whether, under the circumstances shown, accused had not acted in such heat of blood and passion as might, in their opinion, justify a verdict of manslaughter; that the court should not have withdrawn that question, on that evidence, from the jury, by passing upon it itself. Counsel further urged that the rule that an intentional killing may be only manslaughter (what is termed “voluntary manslaughter”) is so well established and so universally recognized that it would be superfluous to cite authorities. They say: “Where the killing is intentional, deliberate, premeditated, and with malice aforethought, the offense is murder; but where the killing is intentional, but without premeditation or malice, but done in the heat of passion, upon sufficient, adequate provocation, the offense is only manslaughter, and that this is true even if done with some deliberation, if without premeditation or malignity of heart, but imputable to human infirmity. State v. Holme, 54 Mo. 166; State v. Ellis, 74 Mo. 207, 222.” They cite Bishop's New Criminal Law, vol. 2, § 697 et seq.; Stephens’ Digest Criminal Law, art. 225; State v. Hill, 34 Am. Dec. 396; McLain’s Criminal Law, vol. 1, §§ 337, 342; Greenleaf on Evidence (13th Ed.) vol. 3, § 122; Wharton’s Criminal Law, vol. 1, §§ 455, 460; State v. Boitreaux, 31 La. Ann. 188; State v. Concienne, 50 La. Ann. 848, 24 South. 134; Walcott v. Brander, 10 Tex. 421; Dikes v. Monroe, 15 Tex. 236, 617; Cooper v. Singleton, 19 Tex. 266, 70 Am. Dec. 333; Hawley v. Bullock, 29 Tex. 223; Dawson v. State, 33 Tex. 492; Stokes v. State, 18 Ga. 17; Biggs v. State, 29 Ga. 723, 76 Am. Dec. 630; Murphy v. State, 31 Ind. 511; Cheek v. State, 35 Ind. 492; State v. Adams, 78 Iowa, 292, 43 N. W. 194; Smith v. State, 83 Ala. 26, 3 South. 551; Campbell v. Com., 88 Ky. 402, 11 S. W. 290, 21 Am. St. Rep. 348. They quote Bishop as saying that “it was too strong to say that the reason of the party *285 should he dethroned, or he should act In a whirlwind of passion,” and Wharton as declaring that, “when there is a legal duty to protect, then an assault on the chastity of a ward [using the term in its largest sense] will be a sufficient provocation to make hot blood thus caused an element which will reduce the grade of the crime to manslaughter. * * * There is no sound reason why a similar allowance should not be made for a father’s or brother’s indignation at a sexual outrage on a daughter or sister. To impose a severer rule would be a departure from the analogies of the -law, and would bring the court in conflict not only with the jury, who, under such circumstances, would never convict of murder, but with the common sense of the community. Supposing the injury to female chastity be avenged in hot blood by a brother, a father, or other person, having a right to protect the person injured; the offense is but manslaughter.” Counsel quote very strong expressions on this subject used by Chief Justice Lumpkin in Biggs v. State, 29 Ga. 723, 76 Am. Dec. 630. Counsel call our especial attention to the Texas and Indiana cases, as holding that the facts must be reviewed from the standpoint of defendant, and that, if the adequate cause and passion existed in the mind of the accused, his offense would be of no higher grade than manslaugher, although such insulting conduct had never occurred, provide he believed it had, and that the charge of the court should be so framed as to submit this important issue to the jury. The district judge did not in the present instance set out the precise grounds upon which he acted, but we imagine he did not exclude the evidence for the reason that he differed in opinion from the commentators quoted, that a homicide committed by a father in hot blood, because of a sexual outrage upon his daughter, would reduce his crime from murder to manslaughter, but because he was of the opinion that too long a period had elapsed between the time when the accused became informed of the outrage and .the subsequent killing to have warranted the jury legally in holding that the homicide was committed in the heat of passion.
The question we have to decide is whether the judge erred in excluding the evidence, instead of allowing it to be introduced and passed upon by the jury in connection with the balance of the evidence which may have been admitted on the trial under proper instructions from the court. We ourselves have no knowledge of what that evidence was, nor what instructions were actually given to the jury. We infer from the fact of the entire exclusion of the testimony of the daughter that no testimony relative to the alleged outrage upon her was sent to the jury. We are not of the opinion that testimony as to the same was irrelevant, immaterial, and incompetent — on the contrary, thnt evidence might disclose facts all-important for a proper decision of the case. The accused was before the jury charged -under the indictment with murder. It was authorized, under such an indictment, if the facts justified, to return a verdict of manslaughter. The accused was entitled to present his defense before it in a way which might exclude an unqualified verdict of murder, or one of guilty without capital punishment. The question of reasonable cooling time is a question of fact to be determined by the jury, and not one to be decided by the court. Rex v. Heyward, 6 Car. & P. 1; Rex v. Lynch, 5 Car. & P. § 24; Wharton, American Criminal Law (4th Ed.) § 900; 1 Russell on Crimes; Rice on Criminal Evidence, § 369, p. 592.
This is particularly the case in Louisiana, where'the juries are judges both of the law and facts. We think the rejected testimony should have been admitted, subject to instructions from the court.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury be set aside, and the judgment rendered thereon be annulled, avoided. *287 and reversed; that the cause be reinstated; and it is hereby remanded to the lower court for further proceedings according to law.
BREAUX, J., concurs in the decree.