## Browder v. Commonwealth.

## (And Two Other Cases.)

(Decided December 20, 1929.)

BECKHAM A. ROBERTSON for appellants.

J. W. CAMMACK, Attorney General; S. H. BROWN, Assistant Attorney General; GLOVER H. CARY and WILBUR K. MILLER for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

On February 4, 1929, the appellants were jointly indicted in the Daviess circuit court charged with the crime of robbery. They were awarded separate trials, and each was convicted. Carl Browder's punishment was fixed at confinement in the penitentiary for 18 years, and that of Grace Browder fixed at 20 years. Both have appealed. The appeals have been consolidated and heard together and will be disposed of in this opinion, as both appellants rely upon the same grounds for reversal.

About 2:55 on the afternoon of January 9, 1929, the Farmers Bank of West Louisville, Daviess county, Ky., was robbed by two bandits, both of whom entered the bank, one armed with a machine gun and the other armed with a pistol. Only the cashier, Mr. O'Bryan, and his young son, Harry O'Bryan, were in the bank at the time. Mr. O'Bryan was operating an adding machine and standing with his back to the door. As the bandits entered one of them said: "Mr. O'Bryan, I have something for you." And, as Mr. O'Bryan turned, he found pointed toward him a machine gun in the hands of the one, and a pistol in the hands of the other, bandit. One of the bandits was a man; the other a woman, considerably smaller than the man, but dressed in a man's clothing. The man said: "Stick 'em up, we are after your money." And with that, the woman went up to the safe and took therefrom $838.43. They then ordered Mr. O'Bryan and his son to go on the outside, turn to the left, and walk away, which they did, with the bandits following. After they stepped out on the street, two boys came out of a store on the opposite side of the street. The man said to them: "Get on the inside." And, when the boys did not move quickly enough, shot toward them. This shot attracted the attention of a number of men in a garage farther away, on the same side of the street, and as these men came out of the garage to the street, the bandits holding the machine gun turned it on them, firing 20 or 30 shots, one of which struck a man named Hays Bratcher, seriously wounding him. The bandits then made their escape in an automobile. They were followed, and the automobile—a Studebaker—was found abandoned, and was subsequently identified as one taken from Clements garage, in Louisville, on the night of January 8, 1929, by two bandits who held up the garage. Appellant Carl Browder on his trial was positively identified by Benjamin Fielden, an employe of the garage and in charge of it at the time the car was taken, as one of the bandits who took the car. Mr. O'Bryan and his son and six or seven other witnesses positively identified appellants as the two who robbed the bank.

The first ground relied upon for reversal is that the court erred in overruling their motions for a continuance. The crime with which appellants were charged was committed January 9, 1929. They were arrested January 13, 1929. On January 15, 1929, they were carried before the county judge of Daviess county for an

examining trial. The examination was passed until January 18th, and on that day both of them waived examination. They were then represented by counsel. The indictment against them was returned February 4th, and on the same day, after severance was granted, the case against Carl Browder set for trial February 13th, and the case against Grace Browder set for trial February 14th. On the calling of his case on the 13th, Carl Browder entered motion for a continuance on account of the absence of material witnesses and filed his affidavit in support thereof, in which he stated that R. J. Jones, A. M. Thompson, and Peg Stewart, residents of Covington, Ky., were important witnesses in his behalf, and, if present, would truthfully state that they were with him in Newport, Ky., on the afternoon of January 8, 1929, and the morning of January 9, 1929, when, at 7:40 o'clock in the forenoon, appellant purchased a railroad ticket and boarded a Louisville and Nashville train at the Union Station in Cincinnati for Atlanta, Ga. It was further stated that the witness Jones was then in Gainesville, Fla., the witness Thompson was then in Waycross, Ga., and the witness Stewart, was then in Baltimore. But it was not stated when they, or either of them, left the state of Kentucky. The commonwealth's attorney, agreed that the testimony of these witnesses, as set forth in appellant's affidavit, might be read as the deposition of the witnesses, and thereupon the motion for a continuance was overruled. The case went to trial, which was completed the next day; the jury being unable to agree, were discharged, and the case reassigned for trial February 25th. On that day the case was again called and the trial completed on February 26th, with the result above indicated. But in the interim of 10 days no further attempt was made to secure the attendance of these witnesses.

On February 14th, on calling of the case against Grace Browder, she filed her affidavit for a continuance, wherein she stated that, if granted a continuance, she could take the depositions of Mrs. Kate Crauselle, Mrs. Alberta Welborne, R. H. Cannon, Mrs. R. L. Pottsman, and Dr. W. D. McGuffy, all residents of Atlanta, Ga., by whom she could show that she was sick and confined to her bed and room in Atlanta, Ga., from December 21, 1928, until January 13, 1929; that, if such continuance were granted, she could take the depositions of Charley Davis, Ray Best, Isadore Diamond, and Thos. Pendleton,

all residents of Detroit, Mich., by each of whom she could show that her reputation for honesty, morality, truthfulness, and good citizenship, was good. The commonwealth's attorney agreeing that her affidavit might be read as the deposition of the absent witnesses, her motion for a continuance was overruled.

The appellants were arrested on January 13th, and lodged in the Daviess county jail on the 14th. The appellant Carl Browder was a native of McLean county, an adjoining county to Daviess. On the next day two half-brothers, residents of the vicinity, came to see him and arranged for counsel to represent him. It was exactly 30 days from the date of their incarceration until Carl Browder was tried the first time. Both appellants then knew that their defense was an alibi, and must have then known the witnesses upon whom they would rely to establish it, yet no steps were taken to procure the attendance of the witnesses residing in Kenton county, Ky., nor to take the depositions of those outside the state, except that subpoena was issued for Jones, Thompson, and Stewart, directed to the sheriff of Daviess county, by whom it was returned not executed, as the witnesses named therein were not found in that county. Of course, appellant Carl Browder knew these witnesses did not reside in Daviess county, and, if they resided in Kenton county, and the subpoena had been sent to that county, it might have been executed, as there is nothing in the record to show that these witnesses were not in Kenton county on February 4th, the day the case was set for trial. While section 11 of the Constitution guarantees to one charged with crime compulsory process for his witnesses, and this has been held to mean that he shall have sufficient time granted for that purpose (Mitchell v. Commonwealth, 225 Ky. 83, 7 S. W. (2d) 823), under the facts of this case, 30 days were ample time in which to take the depositions of the witnesses named in the affidavits if appellants had set about preparing for their defense with diligence.

It is well settled that the granting of a continuance in a criminal case is addressed to the sound discretion of the court, and, unless that discretion is abused to the clear prejudice of the defendant, the action of the court in overruling the motion will not be disturbed on appeal. Bolin v. Commonwealth, 206 Ky. 608, 268 S. W. 306; Graham v. Commonwealth, 200 Ky. 161, 252 S. W. 1012; Brandriff v. Commonwealth, 227 Ky. 389, 13 S. W. (2d)

273. However, the affidavits of appellants containing the facts, which it was claimed the witnesses would give in evidence if present in person, or by deposition were read on their respective trials, as the depositions of the witnesses, and the jury was admonished by the court to give that evidence the same consideration they would give it if the witnesses were present in person. Under these circumstances the court did not abuse a sound discretion in overruling the motions for continuances.

2. It is next insisted that the testimony concerning the shots fired by the bandits and the wounding of Hays Bratcher was incompetent and should not have been admitted. The general rule is that testimony concerning other crimes charged against the defendant is incompetent; but there are exceptions to it, as where it is necessary to establish identity, or guilty knowledge, or interests, or motive for the commission of the crime under trial, or when the other offense is, or offenses are, so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial. Romes v. Commonwealth, 164 Ky. 334, 175 S. W. 669; Maiden v. Commonwealth, 225 Ky. 671, 9 S. W. (2d) 1018; Harris v. Commonwealth, 226 Ky. 584, 11 S. W. (2d) 410. The shots fired by these bandits from the machine gun and the wounding of Mr. Bratcher were so connected with the robbery and were so much a part of that crime that testimony concerning them could not well be separated from testimony concerning the robbery in the introduction of the testimony to establish the latter crime; and it is apparent from the facts and circumstances proved that the shots were fired for the purpose of preventing the persons shot at from being able to identify the perpetrators of the robbery. Under the exceptions to the general rule above referred to, and for the reasons given, the testimony complained of was competent.

3. It is urged that certain parts of the closing argument of the commonwealth's attorney were improper and prejudicial. This contention is based upon the reference made by the commonwealth's attorney to the shots fired and the wounding of Mr. Bratcher, and appellants' claim that the testimony concerning those acts was incompetent. The claim that the testimony was incompetent has been disposed of adversely to appellants.

The statements complained of dealt entirely with testimony heard by the jury and were not out of line of legitimate argument. So long as the attorney adheres to the record for his facts and to reason for his deductions, he is within his rights. See Ratcliffe v. Commonwealth, 231 Ky. 337, 21 S. W. (2d) 441.

4. Finally, it is urged that the verdict in each case is flagrantly against the evidence. This claim is utterly without merit. Appellants were positively identified by the bank cashier Mr. O'Bryan, and his son, Harry O'Bryan; by T. E. Hicks, who saw them as they got out of their automobile and went into the bank; by B. J. Heady, who saw Carl Browder manipulating the machine gun and saw Grace Browder get into the automobile while the machine gun was being fired; by Hays Bratcher, who was wounded; by Monte Cummings, telephone operator, who looked from the telephone office in the bank building and saw Carl Browder firing the machine gun; and by Melvin Head, who saw O'Bryan and his son pass his window holding their hands up and then went to his store door and saw Carl Browder firing the machine gun. Each of the appellants has had a fair and impartial trial. The evidence of their guilt is overwhelming. The record discloses no reversible error.

Wherefore the judgment in each case is affirmed.