## Patton v. Commonwealth.

(Decided September 30, 1930.)

846

A. F. BYRD and LOVELL H. LILES for appellant.

J. W. CAMMACK, Attorney General, and JOHN P. CUSICK, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Willis—Affirming.

Emory Patton was convicted of the crime of murder and his punishment fixed at confinement in the penitentiary for life. He has prosecuted an appeal from the judgment, assigning several grounds for reversal, which will be considered in the course of the opinion.

An abridged statement of facts will suffice.

On the night of April 17, 1930, Emory Patton, Widd Patton, and Orvill Tackett, went to East Fork, in Greenup county, to fish. They found Wess Tackett and Rollie Tackett already on the grounds and engaged in a

similar adventure. They built a camp fire and arranged to spend the night fishing. A rather lengthy shoals at the point chosen afforded fair fishing territory at that season. William Wireman and two children had a camp fire at the upper end of the shoals. Wireman took his children home and returned to join the Patton party. They had supper together, and later in the evening some moonshine whiskey was consumed. The camp broke about 4:30 in the morning, when the suggestion was made by one of the men that he had to work that day. William Wireman, whose home was near, invited all the party to remain with him for breakfast, but the invitation was not accepted. None of the witnesses for the commonwealth testified to the slightest manifestation of any ill feeling. Wireman caught some fish and gave them to the appellant. Rollie Tackett had borrowed an axe, and, as the camp broke up, he wanted to return it. Wireman offered to do that for him, whereupon Tackett said he would be glad if Wireman would attend to it. Just before the killing, all of the men were sitting around the camp fire. All, except Wireman, who remained seated, arose and started away. The witnesses walked a few steps with their backs to Wireman and Emory Patton, who lingered behind. Two shots in quick succession were heard, and upon looking back Wireman was tumbling over on his right side. He exclaimed "Emory, why did you do that?" The axe was lying on the ground several feet from the deceased. Patton was very near with a pistol in his hand. At first he said nothing, but, upon being pressed for an explanation, asked, "Would you let a man come at you with a double bitted axe?" The men did not return or try to aid Wireman, but continued on their departure. Appellant started to leave, but turned back and said he was going to finish him. When urged not to go back, he persisted and remarked that dead men tell no tales. A little later he rejoined his companions and stated that Wireman was dead. They then left the scene. Wireman had two bullet wounds in his body, one at the shoulder and one in the chest, both ranging downwards. The appellant relied upon the defense of himself and his uncle, W. D. Patton. He claimed that while Wireman and W. D. Patton rested at the camp fire, and the other men were out on the shoals, Wireman had stated to W. D. Patton that he had

a settlement to make with Emory Patton. W. D. Patton later called Emory Patton to one side and told him to watch William Wireman. He testified that, as the men left, Wireman attempted to assault him and W. D. Patton with the axe and he shot him to prevent it. He was corroborated by the testimony of W. D. Patton, who was not at the trial, but whose version of the affair was set forth in an affidavit for a continuance.

It is first insisted that the verdict of the jury is not sustained by the evidence. The argument is predicated upon the claim that, as the men appeared to be friendly, appellant's theory afforded the only reasonable explanation of the killing. The jury was not bound to accept the explanation made by the appellant. The other testimony contradicted that explanation, and the physical facts could hardly be reconciled with such a theory. Indeed, the evidence for the defense justified the jury in finding that Patton cherished resentment towards Wireman, because of supposed threats which had been repeated to him and because of things said about him by Wireman. In any event, the credibility of the witnesses and the determination of facts from conflicting evidence were within the peculiar province of the jury, and its verdict was amply sustained by evidence. Wright v. Commonwealth, 221 Ky. 226, 298 S. W. 673; Brown v. Commonwealth, 226 Ky. 255, 10 S. W. (2d) 820; Day v. Commonwealth, 197 Ky. 730, 247 S. W. 951; Perkins v. Commonwealth, 227 Ky. 120, 12 S. W. (2d) 297.

It is next insisted that the court erred in denying a continuance requested by the appellant. The offense was committed in April, and the trial occurred at the May term of court. The affidavit for continuance was based upon the absence of appellant's uncle, W. D. Patton, and one W. M. Hatfield, and a narrative of what the absent witnesses would testify was contained in the document. The court permitted the affidavit to be read, and admonished the jury to accept it as the testimony of the absent witnesses with the same effect as if they had been present at the trial. Widd Patton was out of the state, and beyond the power of the court to compel his attendance. No compulsory process was asked for Hatfield who was said to be in Martin county. The testimony was of a type easily stated, and was probably as beneficial to defendant in the form given, as would have been the presence of the witnesses, in which case they would have been

subject to cross-examination. It is settled practice that action on motions for continuance is largely discretionary, and will not be revised unless an abuse appears to have prejudiced the rights of the defendant. It is plain that the discretion of the trial court in this matter was not abused in this case. Criminal Code of Practice, sec. 189; McQueen v. Commonwealth, 224 Ky. 89, 5 S. W. (2d) 487; Mullins v. Commonwealth, 227 Ky. 514, 13 S. W. (2d) 535; Jamerson v. Commonwealth, 230 Ky. 704, 20 S. W. (2d) 711; Thurman v. Commonwealth, 142 Ky. 347, 134 S. W. 174; Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22; Browder v. Commonwealth, 232 Ky. 205, 22 S. W. (2d) 615.

It is further insisted that there was no evidence of previous malice, and that the court should not have given an instruction on willful murder. Sufficient has been said to show the fallacy of that argument. McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. (2d) 115, relied upon by appellant, is not in point upon the question argued. McHargue shot a man who had just committed a deadly assault upon his brother. Such was the sole reason for his act. But the opinion in that case clearly defined malice aforethought as meaning a predetermination to do the act of killing, without legal excuse, and it is immateral how suddenly or recently before the killing such determination was formed. Turner v. Commonwealth, 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329. That definition was given to the jury by the instructions in this case. The subject has been elaborated so often that further repetition is not necessary. Malice may be inferred from the circumstances, and the unlawful and intentional use of deadly weapons warrants an inference of malice, imposing upon the defendant the burden of excusing his act. Ferguson v. Commonwealth, 224 Ky. 151, 5 S. W. (2d) 897; Fleenor v. Commonwealth, 221 Ky. 175, 298 S. W. 376; Morgan v. Commonwealth, 228 Ky. 432, 15 S. W. (2d) 273; Milburn v. Commonwealth, 223 Ky. 188, 3 S. W. (2d) 204.

Finally, it is insisted that the court erred in the exclusion of evidence. The sheriff of Greenup county, having learned of the death of Wireman, proceeded to the scene to conduct an investigation. On his way he met appellant and another man coming towards the county seat. The appellant then surrendered to the sheriff and was brought to the county jail. The court excluded a

statement of appellant to the sheriff to the effect that he wanted to come in and would go with the sheriff then, and save taking the other car to town. It is argued that the evidence was important to the defendant. It was merely a self-serving declaration and clearly imcompetent as evidence for him. The fact of his surrender, for whatever it was worth, was not disputed before the jury. The other objection to the exclusion of evidence related to the testimony of a witness who had been in jail at a time when the deceased was imprisoned. He testified that Wireman had said in a secret talk with him that he was going to kill Emory Patton if he ever got out. It developed that Emory Patton was not told of the threat until after he had killed Wireman. The court excluded the statement from the jury, but the commonwealth then withdrew its objection. The effect was to permit the jury to consider the evidence. Threats of the character indicated in this instance are admissible, whether communicated or not, upon the ground that they illustrate the attitude of the deceased toward the defendant, and, where self-defense is claimed, may throw light on his conduct at the time of the homicide. Jones v. Commonwealth, 191 Ky. 485, 231 S. W. 31; Colson v. Commonwealth, 200 Ky. 402, 255 S. W. 60; Murphy v. Commonwealth, 205 Ky. 493, 266 S. W. 33.

The defendant had a fair trial, and the result reached by the jury was fully justified by the facts established by the evidence.

The judgment is affirmed.