## Dial v. Commonwealth.

(Decided Oct. 8, 1937.)

THOMPSON & WALDEN and C. L. JONES for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At about 4 o'clock p. m. February 22, 1937, the appellant and defendant below, John Dial, in the town of Edmonton, Metcalfe county, Ky., struck Raymond Cassady in the back of the head with a stick of firewood, from the effects of which, according to the testimony and the verdict of the jury, he died during the following night. Defendant was indicted, charged with the murder of Cassady, and upon his trial he was found guilty of voluntary manslaughter and punished by confinement in the penitentiary for 16 years. His motion for a new trial was overruled and from the verdict and judgment pronounced thereon he prosecutes this appeal, urging a number of grounds as material and prejudicial errors, all of which are embraced by this classification: (1) Error of the court in overruling defendant's motion for a continuance; (2) incompetent evidence admitted in behalf of the Commonwealth; (3) error in the court's instructions, and (4) insufficiency of the testimony to support the verdict, and which rendered it flagrantly against the evidence. Before taking them up seriatim for disposition (which will later be done) we deem it appropriate at this point to make a brief statement of the facts as disclosed by the testimony.

Deceased was the former husband of Annie Dial,

whom defendant married after she had obtained a divorce from her first husband, the marriage of defendant to her occurring some few months before the homicide. After that marriage defendant had some kind of employment in Glasgow, Ky., and his wife spent part of the time in that city with him, but when not there she was supposed to be at the home of her mother, which was on a farm in Metcalfe county and, as we gather, in the neighborhood of where she and her former husband resided, and near where he was residing at the time he was killed. However, very recently before the killing, defendant and his wife had made arrangements to move upon a farm which they appear to have rented, and which was located in the same neighborhood, but whether or not they had actually moved to that farm is not made clear. At any rate they were in the town of Edmonton on the day indicated and somewhere near 4 o'clock Mrs. Dial went to the merchandise store of Mrs. Victoria Terry, at which place she had left her overshoes when she and her husband arrived in Edmonton, her return to that store being for the purpose of obtaining and putting on her overshoes preparatory to returning home or to the place where she and her husband contemplated going.

Shortly after she went into the Terry store, and while she was putting on her overshoes, her former husband, the deceased, went into it, and he and she engaged in conversation. Mrs. Terry was the only witness for either side who attempted to narrate what occurred between them after the appearance of the deceased in the store. She said that directly after he came in he said: "Annie I hear that you are trying to rent —————— place, you and John Dial this year." The witness then stated that "Annie didn't say anything," but that deceased repeated the statement and then Annie said: "Raymond, I am not married to you now, and I am not going to take anything off of you, and I don't approve of the drunken company you are keeping Woodrow in," to which deceased replied: "I will slap you out of that chair"— when, according to the witness, "They both got up and started fighting and they were slapping at each other with their hands and fists and I was trying to get them to stop." She then commenced screaming, according to the witness, and calling for help when, about that time, as said by her, "Annie had a stick of wood in her hand, but I didn't discover anything that Raymond was fight-

ing with other than his hands, and I kept screaming for help but it was a long time getting there, finally John Dial came on the scene, but before that Annie hit Raymond with the stick and he fell in the door.'' She then stated that the striking of the deceased by Annie, and his falling in the door from the effects thereof, occurred before John Dial appeared on the pavement just outside of the door. She said she did not see defendant strike the deceased as her attention was momentarily directed to something else. However, there were a number of other witnesses standing immediately in the vicinity of the front of the Terry store who testified for the Commonwealth, two of whom were almost immediately by the side of the deceased when defendant came from some portion of the street in front, and en route he picked up a stick of wood and without saying a word went straight to the deceased, who in the meantime had managed to arise from the effects of the blow inflicted by his former wife (though then in a tottering condition), and inflicted a severe blow on the back of his (deceased's) head which caused him to fall in the door with a part of his body extending out on the walk.

Deceased was carried from that place to a doctor's office where his wounds were dressed and he was later taken to his home and put to bed. He was found dead the next morning, but he had in the meantime gotten out of bed and his corpse was some distance from it near the door to the room where the bed was. Physician's testimony proved that either of the inflicted wounds could have produced death, but that the one on the back of his head, which was the one inflicted by defendant, was the more severe of the two and most certainly calculated to so result. The defense proved by a witness or two that possibly the deceased had consumed some alcohol on that day, but the great weight of the testimony, as given by witnesses for both sides, was to the effect that he was not intoxicated. According to the witnesses for the Commonwealth there was an appreciable time between the inflicting of the wound by the wife in the Terry store and the infliction of the one by defendant after deceased had gotten up from the knockdown that was administered by the wife. However, the same witnesses testified that he was in a tottering condition after he had arisen from the effects of the wife's blow. All of them testified that at the time of the infliction of both wounds deceased had no sort of weapon

and was apparently doing nothing further than to make his escape from the enraged Annie, and was apparently backing out of the store, she having subsided after she inflicted the blow upon the deceased with the stick of stovewood she had picked up from a rick beside the stove in the Terry storeroom.

Defendant himself was the only defense eyewitness who appeared at the trial. He testified to a different story, and which was—that at the time he struck deceased the latter was then assaulting defendant's wife and engaged in choking her; but he did not claim that deceased had any weapon or was using anything except his hands, and possibly his fists. He was permitted to read his affidavit as to what two absent witnesses would testify, and which was substantially the same as his own testimony. But he and his absent witnesses together did not equal the number of eyewitnesses to the transaction who appeared and testified at the trial for the prosecution. The foregoing statement as so briefly made substantially embraces the material facts occurring at the time, and upon the occasion of the fatal difficulty. We will now proceed to a determination of the above-enumerated grounds for a reversal, in the order named.

1. In presenting the argument in support of ground (1) counsel for defendant cites only section 189 of the Criminal Code of Practice and the case of Patton v. Commonwealth, 235 Ky. 845, 32 S. W. (2d) 405, 407, which case is likewise cited and relied upon by counsel for the Commonwealth, and they also cite the additional case of Browder v. Commonwealth, 232 Ky. 205, 22 S. W. (2d) 615, in support of their countercontention that the court did not abuse a sound discretion in overruling defendant's motion for a continuance, and permitting his affidavit to be read as the testimony of such absentees. It is stated in brief for appellant, in substantiation of which he makes the above citations, that "It is settled practice that action on motions for a continuance is principally discretionary, and will not be revised, unless an abuse appears to have prejudiced the rights of the defendant." In the Patton case the offense was committed in April and the trial occurred a month later in May, and which parallels the situation here (i. e., that the trial occurred a month after the commission of the offense), and in that case there were two absent witnesses whose testimony, as contained in the affidavit for

a continuance, the court permitted to be read. In disposing of the same alleged error the court employed the above inserted language from appellant's brief, and then said: "It is plain that the discretion of the trial court in this matter was not abused in this case." In substantiation thereof these cases are cited by the court: Thurman v. Commonwealth, 142 Ky. 347, 134 S. W. 174; Fletcher v. Commonwealth, 210 Ky. 71, 275 S. W. 22;. McQueen v. Commonwealth, 224 Ky. 89, 5 S. W. (2d) 487; Mullins v. Commonwealth, 227 Ky. 514, 13 S. W. (2d) 535, and the Browder Case, supra. The list, approving the same rule of practice, could have been quadrupled, since it is in the rarest of instances that discretion in such matters will be considered as abused if the court permits the testimony of the absent witness,. if material, to be read. The purpose in enacting that rule, as contained in the section of the Criminal Code of Practice supra (section 189), was to facilitate the trial of cases and to not permit them to accumulate upon the dockets of the courts, and to perpetually stand in the way of the transaction of other business, by permitting movant to set out in his affidavit the testimony of the alleged absent witnesses, with other necessary facts, and to have it read upon the trial as the testimony the absent witness or witnesses would give if present. We see no distinction between this case and those cited above and none is pointed out to us in brief. It is, therefore, apparent that this ground is without merit.

2. The alleged incompetent evidence urged in support of ground (2) was: (a) The fact that some witness. or witnesses in giving their testimony stated that defendant's wife was the former but divorced wife of deceased; and (b) that some witnesses testified to the fact that Mrs. Dial after her marriage to defendant visited the home of the deceased, who in the divorce proceedings was given the custody of their only child, a son, Woodrow Dial, but with the privilege of the wife to see her son on stated occasions. Before any objection was raised to the testimony complained of in subdivision (a), (which incidentally crept into the case) the testimony of Mrs. Terry had been given and it divulged the same fact and to which no objection was made. No logical or otherwise acceptable reason is pointed out wherein that testimony was incompetent, or, if incompetent, that it was in the least prejudicial to appellant. On the contrary, it would appear that it was more beneficial than

prejudicial to him, since it was more calculated to engender animosity towards him by the deceased for having become the husband of the latter's former wife. But, however that may be, we are far from concluding that this complaint (a) embodies reversible error, and for which reason it is overruled.

The testimony complained of in subdivision (b) supra of this ground appears to have been admitted by the court to contradict defendant when he stated in his testimony that his wife, when away from Glasgow where he was temporarily located, was with her mother in Metcalfe county. But the testimony was and is clearly immaterial the one way or the other, and could have no sort of bearing upon the guilt or innocence of the defendant, nor upon what occurred at the time of the infliction of the fatal blow by appellant. The witness who so testified to having seen Annie at the home of the deceased, after she became the wife of the defendant, also stated that he likewise observed that her child, Woodrow Dial, was present and with her, and which testimony was given following a stipulation in the case to the effect that Annie had obtained a divorce from the deceased but that he "was given the custody of their infant child (Woodrow Dial) and that she might visit it at all reasonable times and places." That stipulation was a fact agreed to by defendant himself and surely it could not be considered as error (although not material) to show that she availed herself of that privilege and did visit the child. We, therefore, conclude that neither argument of counsel in support of this ground possesses merit.

3. Much space is taken up in brief of counsel in the discussion of ground (3), but the entire argument is directed to the point or contention that it was error to give to the jury the murder instruction. No complaint is made about the proper wording of that instruction; but it is vigorously argued that the testimony did not authorize such an instruction and that it was, therefore, fatal error to give it. The argument is made in the face of the fact that defendant was not convicted of murder, but only of voluntary manslaughter, which was a finding by the jury that his striking the deceased was either in sudden heat and passion, or upon provocation reasonably calculated to incite his passion beyond the power of control. The principal case relied on for the contention so made by counsel is McHargue v. Commonwealth, 231

Ky. 82, 21 S. W. (2d) 115, but the prior one of Campbell v. Commonwealth, 88 Ky. 402, 11 S. W. 290, 10 Ky. Law Rep. 975, 21 Am. St. Rep. 348 is also cited. We have carefully read those opinions and neither of them even make an approach toward the facts and the conditions here presented. In the McHargue Case appellant was convicted of murder which, of course, was under the murder instruction; but we determined, from the testimony found in the record, that McHargue was at most only guilty of voluntary manslaughter and that there was no evidence to support premeditated malice or "malice aforethought" required to sustain a conviction for murder. Having arrived at that conclusion we, of course, held that it was error to give the murder instruction. But in this case, as we have seen, the jury discarded the murder instruction and found defendant guilty of the lower degree of the offense, voluntary manslaughter. We are not prepared to even hold in this case that it was error to give the murder instruction, since we conclude the testimony is amply sufficient to authorize a submission of that degree of the homicide to the jury. However, without that conclusion, the two cases are as far apart as the two poles of the globe upon which we reside. Likewise is the Campbell case inapplicable to the facts of this one, as a reading of the opinion will clearly demonstrate. It is, therefore, clear that this ground is also without merit.

4. In view of the foregoing recitations and conclusions the jury evidently flavored its verdict with a seasoning of mercy when it reduced the offense to voluntary manslaughter, and we are far from concluding that its members went afield when they found defendant guilty of the lesser offense of homicide. The testimony of the Commonwealth's witnesses—which they intelligently and clearly gave, and all of whom were unrelated to the parties and apparently unbiased—made out a case of wholly inexcusable homicide, and we would feel stultified to hold that the verdict was flagrantly against the evidence or was not sustained by it.

There is a vague additional intimation in brief of counsel that, possibly, the wound inflicted by defendant did not proximately produce decedent's death, and in support thereof attention is called to the fact that a physician witness introduced by defendant said that the fatal consequences of such a wound might be enhanced if the victim was intoxicated at the time of receiving it,

and by the further fact that witnesses testified to a rock being found in the room at the time decedent's dead body was discovered therein. However, it was uncontradictedly shown that the rock was one that decedent procured for a door stop and which had been in his room long prior thereto. Of course, the first fact (that of intoxication of deceased), even if true and if it had been proven conclusively that deceased was intoxicated, could furnish no excuse amounting to a defense in this case, and we will neither tax ourselves nor lengthen this opinion by a further discussion of it.

Wherefore, for the reasons stated, the judgment is affirmed.