## Partin and Allen v. Commonwealth.

(Decided February 23, 1923.)

### Appeal from Harlan Circuit Court.

1. Criminal Law—Setting Judgment Aside.—Since the amendment of 1910 to section 281 of the Criminal Code, a judgment of conviction in a criminal case may be set aside on the ground that it is flagrantly against the evidence and is not sustained by it. Therefore if the evidence in connection with the proven circumstances be such as to induce the belief in the mind of the court that the conviction was superinduced by passion and prejudice of the jury so much so as to shock the conscience of the court, it will be the duty of the latter to set it aside upon the ground named. And if not done by the trial court, it is the duty of this court to do so on appeal.

2. Arrest—Marshal of Town of Sixth Class.—A marshal of the town of the sixth class is a peace officer throughout the county and may make an arrest under any of the conditions mentioned in section 36 of the Criminal Code at any place in the county.

3. Arrest—What Will Relieve Officer of Duty to Make.—If one about to be arrested by an officer having a right to arrest him suddenly offers resistance before the officer has time to notify him of the intention to arrest him, such conduct will relieve the officer from the duty of so doing.

4. Homicide—Resisting Arrest—Power of Officer.—An officer has no right to kill one about to be arrested for a misdemeanor in an effort to overcome resistance to the arrest, but he may do so if necessary to overcome resistance to an arrest for the commission of a felony, and where the supposed culprit when the officer was about to arrest him for a misdemeanor unjustifiably shoots and wounds another in the presence of the officer, he thereby commits a felony in the officer's presence and he may arrest the offender without a warrant and if the arrest is resisted the officer may kill him if necessary to overcome that resistance.

5. Homicide—Making Arrest.—Under the circumstances above out-
lined the court should, under its duty to submit the whole law
of the case to the jury, give an instruction defining the rights and
duties of the officer as well as those of the alleged offender, which
defense is in addition to and wholly independent of the ordinary
right of self-defense.

J. S. FORESTER and ACREE & BAKER for appellants.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellants, Mack Partin and W. S. Allen, were jointly
indicted by the grand jury of Harlan county with Mar-
shall Martin (who is now dead), in which they were ac-
cused of wilfully murdering Andrew Howard, and upon
their joint trial they were convicted of voluntary man-
slaughter and punished by the verdict of the jury by
confinement in the penitentiary for four years each.
Their joint motion for a new trial was overruled and they
have appealed, urging through their counsel a number of
alleged errors as grounds for a reversal of the judgment;
but the record convinces us that only two of them are of
sufficient merit to require our consideration. They are
(1), that the verdict is not sustained by the evidence and
is flagrantly against it, and (2), error of the court in fail-
ing to instruct the jury upon the whole law of the case.

1. The disposition of ground (1), calls for a brief
but substantial statement of the facts as testified to by
the witnesses. The killing occurred in a public road just
outside the corporate limits of the town of Wallins Creek,
which is one of the sixth class, on a late Sunday afternoon
in August, 1921. The deceased. Andrew Howard, Kelly
Demarcus and Buck Allen were together in the road just
across Cumberland river, and opposite the home of Beve
York, and there were residences nearby on that same side
of the river. According to the undisputed testimony of
Buck Allen, who was with the deceased, the trio had been
together the larger portion of the day and had drunk
much moonshine whiskey. They had with them at the
time a considerable quantity in a glass fruit jar which
they had deposited in the middle of the road, with the de-
ceased sitting on a rock on the upper side of the road and
the other two on the lower side. They were not only en-
gaged in drinking after their stop in the road but they
were likewise indulging in reprehensible conduct, as well

as language, in which the deceased appears to have led and was the principal offender. They cursed Mr. York just across the river and applied to him and his wife much vulgar language and the deceased threatened to shoot him, after he had protested, and made a demonstration to do so without actually firing, and York hid himself in the weeds. Mrs. York managed to make her escape and lodged complaint with the appellant, Partin, as the marshal of the town, and he summoned defendants, Allen and Martin, to go with him to arrest the parties whoever they were and to quell their disturbances. Upon arriving at the scene deceased was sitting upon the rock on the upper side of the road and Demarcus and Allen on the lower side, when the officer said, "How do you do, gentlemen," and Demarcus, being nearest to them, they came in contact with him first, and he said to Partin, "Mack, help me up." The latter then took hold of him and lifted him up and was in the act of searching him when deceased, just across the road, arose and presented a pistol at Martin, who said to him, "What are you doing; I am your friend." Whereupon deceased turned towards defendant, Partin, and said: "You God damned son-of-a-bitch, get up the road," and immediately fired his pistol, which he had already drawn, and shot Demarcus in the jaw. Deceased continued shooting until he had fired three or four shots, which were in rapid succession, but in the meantime the officers began firing at him resulting in his death. The facts, as thus briefly outlined, are testified to by both defendants as well as by a number of other disinterested eye-witnesses who were located near the scene and on the same side of the river. They were substantially corroborated by Mr. York, who was across the river, and in addition there were from six to ten witnesses who were in the immediate vicinity of the shooting but did not see it and who testified that the first three or four shots were from a smaller pistol than those which followed, and the undisputed proof is that the deceased had an automatic 32 pistol and the smallest one carried by any of the officers was a 38 pistol. A number of persons arrived at the scene just after the shooting and the Commonwealth proved by them that deceased was lying in the road with his pistol grasped in his hands, but the automatic trigger was locked and some unfired shells were in the magazine, and some of the witnesses said they did not discover any empty shells near him, but other witnesses testified that they did find

empty 32 shells nearby his body. One witness for the Commonwealth testified that he inserted some white paper in the barrel of the pistol of the deceased and there were no powder stains on it, indicating according to his mind that the pistol had not been fired, but there was proof in the case and not denied that nitro or white powder will not produce stains in the barrel of the pistol or gun, at least not so much as black powder, and there was testimony that the shells fired by deceased were loaded with white powder. Other witnesses who examined that pistol testified that according to their opinion it had been recently fired. But, passing that character of testimony, the evidence discloses what we might term beyond a reasonable doubt that the deceased on the fatal occasion fired the first three or four shots. But one eye-witness for the Commonwealth testified as to what occurred at the time and the substance of his testimony is that the officers appeared and immediately commenced shooting at the deceased who neither had a pistol nor fired a shot. That witness said that he was nearby and on the side of a hill or mountain where he had gone to get an arm load of stove wood, which he carried to his house some distance after witnessing the tragedy, and did not return until after a lapse of about ten minutes. That testimony is overwhelmingly contradicted, not only by the express testimony of all the other witnesses, some of whom testified for the Commonwealth, but also by all the circumstances in the case, and in addition the witness' character for morality and good standing in the community is impeached by the testimony of a number of witnesses, among whom were some of the officers of the county, and in the light of the record, as so presented, any court or jury would be fully warranted in wholly disregarding the testimony of that witness. We have given but a general outline of the testimony without going into details which, if done, would more completely establish the theory of defendants and their contentoin as to how the killing occurred than does the general outline given.

Since the amendment in 1910 to section 281 of the Criminal Code of Practice, this court has jurisdiction to reverse a judgment of conviction in a criminal case on the ground that it is flagrantly against the evidence, but which authority we have continually held should be sparingly exercised, and not done unless from the entire record it is made patent to a reasonable and impartial mind that the verdict was the result of passion and prejudice

on the part of the jury to such an extent as to shock the conscience of the court whose primary duty is to administer justice in all cases. Day v. Commonwealth, 197 Ky. 730; Anderson v. Same, 196 Ky. 30; Allen v. Same, 176 Ky. 475; Polley v. Same, 171 Ky. 307; Day v. Same, 173 Ky. 269; Crews v. Same, 155 Ky. 122; Hall v. Same, 149 Ky. 42; Edmons v. Same, idem 242, and Lucas v. Same, 147 Ky. 744. The cited cases are only a part of those from this court announcing the same rule of practice, and we are convinced that no case heretofore before us furnished any stronger grounds for its application than those appearing in this record.

(2). The appellant, Partin, was a peace officer, and under section 3687 of the Kentucky Statutes, which is a part of charters of cities of the sixth class, he is given the same right to make arrests anywhere in his county as is possessed by the sheriff, and this court held in the case of Helm v. Commonwealth, 26 Ky. L. R. 165, and others referred to therein, that a marshal of a sixth class city had the right to make arrests outside of the corporate limits of his town and within his county, and it was error in this case to permit the introduction of testimony that the killing occurred outside of the corporate limits of the town of Wallins Creek.

The court gave the usual defining instructions, and submitted to the jury the guilt or innocence of the appellants of the crimes of wilful murder and voluntary manslaughter, with the usual self-defense instruction. Defendants offered one on the rights of an officer in making an arrest and the corresponding duties, as well as the rights of the one about to be arrested, which the court refused. Without passing upon the correctness of the offered instruction, we are convinced that the evidence in the case was sufficient to call for a submission of those issues in an appropriate instruction. The case of Hickey v. Commonwealth, 185 Ky. 570, and others referred to therein, fully states the rights and duties of an officer under such circumstances as well as those of the offender. It is shown therein that where the right to make the arrest exists the officer may not take the life of the offender though he resists the arrest, unless purely in the exercise of his right of self-defense, where the arrest is for a misdemeanor only, but if the committed crime is a felony and the offender resists the arrest, the officer may exercise such necessary force to overcome the resistance even to

the taking of his life. See also Commonwealth v. Robinson, 27 Ky. L. R. 14.

In this case the evidence indisputably proves that deceased committed the offense of being drunk on the public highway in the presence of the offcer, which was only a misdemeanor. Under the cases referred to neither Partin nor his summoned deputies had the right to take the life of the deceased merely because he resisted arrest for that offense. But the same cases hold that if the offender commits a felony in the presence of the officer, the latter may arrest him for it, as is provided by section 36 of the Criminal Code, without a warrant, and if in doing so the offender resists the arrest then the officer has the right to use such force as may be necessary to overcome that resistance. The Hickey case and that of Reed v. Commonwealth, 125 Ky. 126, expressly so held.

The evidence tended to show that the deceased knew that Partin was an officer, who indeed was wearing his uniform at the time. Of course he knew he was drunk at a place where such conduct was forbidden, and before the officer could notify him of the purpose of his visit he commenced shooting. At any rate there was evidence from which the jury might so conclude, and under such circumstances we held in the case of Tuck v. Beliles, 153 Ky. 850, and in the Hickey case, *supra,* that the duty imposed by law upon the officer to notify the offender of the intention to arrest him would be dispensed with. It would not have been proper for the court to have given the indicated instruction excusing appellants for the shooting if deceased was guilty of no other offense than that of drunkenness, but when he shot Demarcus in the presence of the officers, if done according to the testimony of the defense, he committed a felony in the officers' presence and the jury should have been instructed that if they so believed then defendants had the right to use such force as was necessary to overcome the resistance offered by the deceased even to the taking of his life, and if they believed the killing occurred in that manner, they should acquit defendants.

Furthermore, it was the duty of the court to incorporate in the regular self-defense instruction the right of defendants to defend Kelly Demarcus as well as each other, since he had been attacked and actually shot by the deceased in their presence, provided the jury should believe from the evidence the shooting of Demarcus was not superinduced by any unlawful act of defendants, leg-

ally justifying him in firing the shot which by accident and unintentionally struck Demarcus.

For the reasons stated the judgment is reversed with directions to sustain the motion for a new trial and for proceedings consistent herewith.