## Price v. Commonwealth.

(Decided September 27, 1927.)

### Appeal from Pulaski Circuit Court.

1. Criminal Law.—Since ordinarily the credibility of a witness is for the jury, the judgment in a criminal case will not be reversed merely because the numerical weight of the evidence favors accused.

2. Criminal Law.—Evidence held insufficient to sustain conviction for confederating, where the evidence of commonwealth's only witness bore marks of improbability, he was contradicted on every material point both by interested and disinterested witnesses, and the commonwealth's rebutting witnesses testified that his reputation for truth was bad.

SIMPSON PHELPS, H. E. CUNDIFF and R. C. TARTER for appellant.

FRANK E. DAUGHERTY, Attorney General, G. D. LITSEY, Assistant Attorney General, and NORWOOD FLIPPIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

Appellant was convicted of the crime commonly known as "confederating," and his punishment fixed at one year's imprisonment. A reversal is asked on the ground that the verdict was flagrantly against the evidence.

The only witness for the commonwealth was Bob Pettyjohn, whose evidence, briefly stated, is as follows: He was at his home in Caintown, south of the main Columbia road, a short time after dark. He heard loud talking in front of Jim Tom Calhoun's home on the north side of the road and nearly opposite his home. He crept on the ground through his front yard, and lay on the bank 8 or 10 feet above the bed of the road. It looked like a crowd of 25 or 30 men had assembled. He saw a light

flash as though some one were lighting a cigarette, and recognized Chester Price, Leslie Roberts, and Dee Combest. A crowd was around an automobile in the middle of the road. The lights on the car were burning, and Jim Tom Calhoun's door was open, and the light streamed out of it. Chester Price began to curse him and talk in a loud and boisterous manner. Leslie Roberts said, ''I will furnish the coal oil to burn Bob Pettyjohn's house.'' Chester Price said, ''If you will will furnish the coal oil, I will furnish the match, and we will burn his house.'' Chester Price then pulled a gun and fired it into the ground. Roscoe Tarter appeared on the scene and said to the crowd, ''Boys, let Bob Pettyjohn alone. He is all right.'' Price and Roberts then got into an automobile and drove down the Columbia road in a western direction from Caintown. Several men passed between him and his home. He was not bothered or disturbed further that night, and his house had never been burned or injured. He and Chester Price had had trouble, and his feelings toward Chester were not good. Ira Schoolcraft was also in the crowd.

According to Chester Price, he was in front of the Calhoun house on the occasion in question. No automobile was there. Claude Pierce, Henry Davenport, and Rice Lane were with him. He remained only about 20 minutes and went to his home about 200 yards distant and went to bed. He never cursed Bob Pettyjohn or mentioned his name. Roberts said nothing about furnishing coal oil to burn Bob Pettyjohn's house, and he never told Roberts he would furnish a match if he would furnish the coal oil, and that they would burn Pettyjohn's house. He never saw either Roscoe Tarter or Ira Schoolcraft that night. He never got into a car that night with Leslie Roberts and went down the Columbia road or any place else. He was never about the home of Bob Pettyjohn that night or any time since. Pettyjohn had had him indicted several times. He never fired a gun in front of the automobile, as no automobile was there while he was there. He heard no shots at all that night.

Claude Pierce, who was present, testified that Chester Price, Bit Pierce, Leslie Roberts, and Rice Lane were there. He heard no shooting, and Chester Price fired no shot at all. Chester Price soon left the crowd and went to his home about 200 yards east of where they were. No threats were made by either Leslie Roberts or Chester Price at any time while they were there. Leslie

Roberts did not say, "I will furnish the coal oil to burn Bob Pettyjohn's home." Chester Price did not say, "If you will furnish the coal oil, I will furnish the match, and we will burn Bob Pettyjohn's home." He never saw either Roscoe Tarter or Ira Schoolcraft that night. There were never over 5 or 6 persons present. After Price left, Henry Davenport came up in a car and was stuck in the mud. They tried to get him out and could not. Then Roberts went home and got his car and left with Henry Davenport and Rice Lane, west on the Columbia road. Chester Price never left with them and was not present when they started. When they left, Chester Price had been gone for half an hour. He was acquainted with the reputation of Bob Pettyjohn for truth and veracity, and his reputation was bad.

Ira Schoolcraft testified that he was not in front of Jim Tom Calhoun's house on the night in question and never saw Chester Price that night. Some time after dark he passed through Caintown, but did not stop. There was no crowd of 25 or 30, or 30 or 40, or any mob on the road that night. The road was deserted shortly after dark. He was acquainted with Bob Pettyjohn's general reputation for truth and veracity, and his reputation was bad.

Rice Lane was present on the occasion in question. Claude Pierce, Bit Pierce, Chester Price, and Leslie Roberts were there. Shortly after he got there Chester Price left. Henry Davenport came with a car and was stalled in a mud hole. Some one in the crowd said, "Bob Pettyjohn is a damn good fellow." Leslie Roberts did not say anything about furnishing coal oil to burn Bob Pettyjohn's home, and Chester Price did not say he would furnish a match to set fire to it. Price never got into a car with Leslie Roberts or any one else and went down the Columbia road west. He got into the car himself after Leslie Roberts had gone home. He then went west with Roberts and Davenport. At that time Price had been gone for half an hour. He was acquainted with Bob Pettyjohn's general reputation for truth and veracity, and his general reputation was bad.

Mrs. Laura Cain, who lives a few yards south of Jim Tom Calhoun, did not hear any noise in that direction. She heard a shot shortly after dark in the opposite direction. She lived close enough to hear any loud talking. She knew Bob Pettyjohn's reputation for truth and veracity, and his reputation was bad.

Mrs. Isabel Pierce, the postmaster, testified she lived about 25 steps from where Pettyjohn claims to have heard Chester Price make threats to burn his home. Her window was open, and she could look out in that direction. Her son was out, and she was listening and watching for him. She heard some shooting far down the road toward the store. She did not hear any shots except the one down the road. She could have heard any threats or loud noises where Bob Pettyjohn placed Chester Price. She could have heard 25 or 30 people assembled and talking. They were not there. No shots were fired near her home and no noise was made loud enough to attract her attention 25 yards away. Bob Pettyjohn's reputation for truth and veracity was bad.

Jim Tom Calhoun lived on the north side of the Columbia road, and opposite Bob Pettyjohn's place. His door leading to the road was closed on the occasion in question. He never heard any loud talking that night from any one or any noise sufficient to attract his attention. A car came along, was stuck in the mud near his home, and some boys were there a short time trying to move it. There was no crowd there or anything that looked like a mob. At one time there might have been 4 or 5 boys. He knew Bob Pettyjohn's general reputation for truth and veracity, and it was bad.

The commonwealth then introduced M. J. Cain and Jim Sullivan in rebuttal. Cain testified as follows:

"Bob Pettyjohn is a good worker, but his neighbors give him a bad name for truthfulness."

Sullivan testified as follows:

"I am a deputy sheriff, and am acquainted with Bob Pettyjohn, and know what his reputation for truth and veracity is, and know what his neighbors say about him. It is bad."

Ordinarily, of course, the credibility of a witness is for the jury, and the judgment in a criminal case will not be reversed merely because the numerical weight of the evidence favors the accused. But the evidence does not stop there. The case presented is one where the evidence of the sole witness for the commonwealth not only bears the earmarks of improbability, but he is contradicted on every material point not only by every witness, who was present in the road, and who, it is claimed, participated

in the offense, but also by three other witnesses who were wholly disinterested. In addition to this, the prosecuting witness was shown to have been unworthy of belief by every witness who testified in the case, including the two witnesses offered by the commonwealth in rebuttal for the purpose of bolstering up his reputation for truth and veracity. In view of this situation, there is no escape from the conclusion that the verdict of the jury is flagrantly against the evidence.

For the reasons given, the judgment is reversed and the cause remanded for a new trial consistent with this opinion.