## Nelson v. Commonwealth.

(Decided January 28, 1930.)

CAUDILL & TACKETT for appellant.

J. W. CAMMACK, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment of the Floyd circuit court convicting appellant of robbery, and fixing his punishment at two years' imprisonment.

A summary of the evidence is as follows: John Frazure testified that he was working on Middle creek, and while going down to the camp he met appellant on the road, and spoke to him. Appellant drew his pistol, and fired three shots under his feet. Appellant said, "Stick your hands up," and he did so. Appellant kept holding the gun on him, and he asked appellant what he wanted. Appellant said, "I want your money." He said, "I don't have but a little, come and get it, it is in my shirt pocket." Appellant said, "Get it yourself." He took the money out, and reached it to appellant, who said, "Throw it down." He then pitched the money to appellant, who said, "Go ahead and don't look back." He then went on down the road. After appellant was indicted, he offered several times to return the money, but he would not take it. At the time appellant demanded his money, he was in a curve in the road on Middle creek in below Buckeye, something near a mile below Charlie Slone's house, and about half way between Harmonson Slone's and Charlie Slone's.

On cross-examination he admitted that he had had a few drinks, but did not know whether they fined him for it. No one was with him at the time. He never saw appellant at Charlie Slone's. He might have gone up there when he took his money. He never gave appellant any money to go and get some whisky. The next evening after coming in from work he had a conversation with Charlie Gibson, but did not remember saying anything to him about losing his money, and not knowing who got it.

Charlie Gibson testified·that he met appellant at the mouth of Buckeye the same day. Appellant said he had gotten $2.50 from John Frazure to get some whisky

with, but did not say how he got it. The next morning he met Frazure, who, in a conversation about losing the money, stated that he did not know who got it.

On the other hand, appellant testified that he saw Frazure on Middle creek at Charlie Slone's but did not know him at the time. He never met Frazure between Harmonson Slone's and Charlie Slone's and did not have a pistol. He did meet him at Charlie Slone's and Morgan Slone and Corson Slone were present. At that time Frazure gave him the money to get some whisky with. He and Charlie Gibson then went up the road to get some liquor. He did not get any, and he then went down to the camp to give the money to Frazure, but could not find him. He offered the money back to Frazure the first time he saw him. Frazure said that he had a warrant for him, and did not want the money.

Morgan Slone testified that he saw Frazure at Charlie Slone's. Frazure came down from the mouth of Buckeye, and appellant was there when he arrived. After being there about half an hour, Frazure said, "Take this and go up the road and try to get us some liquor." Appellant did not want to go, and Frazure said, "Go on." At that time Frazure was drunk. He left before appellant returned. He knew nothing about Frazure's meeting appellant in the road. He was not there.

Corson Slone testified that he saw Frazure at Charlie Slone's and appellant was there when Frazure came. He saw Frazure give appellant some money to get some liquor. Appellant then went up Middle creek. It was almost dark when Frazure left. He did not stay until appellant came back. He was not out on the road where Frazure claims to have been robbed. Jim Hale saw Frazure coming through the bottom there at Slone's and had a talk with him. Frazure said he had sent up the creek after some liquor, and, if witness would sit down and stay with him, he would give witness all he wanted. Frazure seemed to be drunk. It was about dark then. In rebuttal Frazure testified that before the robbery happened he stopped at Charlie's, but did not stop as he came down or stay there until dark. It was getting late when he came down to camp. He did not get drunk and lie down.

Reversal is asked on the ground that the commonwealth did not prove that the robbery took place in Floyd county. The rule is that it is not necessary to show

by direct evidence that the crime occurred in the county but that this fact may be established by proof of facts and circumstances from which it may be inferred. Fletcher v. Commonwealth, 210 Ky. 71, 273 S. W. 22; Stubblefield v. Commonwealth, 197 Ky. 218, 246 S. W. 444. While the jury is not presumed to know the location of particular homes, Wilkey v. Commonwealth, 104 Ky. 325, 47 S. W. 219, 20 Ky. Law Rep. 578; Warman v. Commonwealth, 193 Ky. 701, 237 S. W. 378, it is presumed to have some knowledge of local geography, such as the location of towns, precincts, creeks, and the like. Commonwealth v. Patterson, 8 S. W. 694, 10 Ky. Law Rep. 167; Hays v. Commonwealth, 14 S. W. 833, 12 Ky. Law Rep. 611. Following this rule, evidence has been held sufficient to take the case to the jury, where it showed that the offense occurred at "The 'Old Tub Fowler Distillery,' " Keefe v. Commonwealth, 175 Ky. 51, 193 S. W. 645, or "at or near the 'Greenbrier Spring,' " Kennedy v. Commonwealth, 100 S. W. 242, 30 Ky. Law Rep. 1063, or "at the 'mouth of Buckhorn,' and at 'Jones' and Field's storehouses.' " Combs v. Commonwealth, 25 S. W. 592, 593, 15 Ky. Law Rep. 659. We therefore conclude that evidence that the robbery took place "in a curve in the road on Middle creek in below Buckeye, something near a mile below Charlie Slone's house, and about half way between Harmonson Slone's and Charlie Slone's," was sufficient to authorize the submission of the case to the jury.

But the further point is made that the verdict is flagrantly against the evidence. The argument is that not only appellant but other witnesses testified that Frazure gave the money to appellant to buy whisky, that Frazure was drunk at the time, and that even he himself admits that he had had several drinks. Since the credibility of the witnesses is for the jury, its verdict will not be set aside on the ground that it is flagrantly against the evidence, even though the numerical weight of the testimony favors the accused, unless such testimony is strongly corroborated by the physical facts and circumstances, or the witnesses for the commonwealth are impeached by uncontradicted evidence. Baker v. Commonwealth, 200 Ky. 294, 254 S. W. 887; Price v. Commonwealth, 221 Ky. 162, 298 S. W. 383. It is true that appellant and his witnesses say that Frazure was at Charlie Slone's and gave appellant some money with which to

buy whisky. They were not present when it is claimed that the robbery took place and their evidence does not necessarily disprove Frazure's evidence concerning the robbery. Thus we have on one side the evidence of Frazure and on the other side the denial of appellant, supported by the evidence of several witnesses as to what occurred at the house of Charlie Slone. In view of this situation, it cannot be said that the verdict is flagrantly against the evidence.

Judgment affirmed.