## Bowling v. Commonwealth.

(Decided Jan. 24, 1933.)

G. B. STAMPER for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

The grand jury of Breathitt county returned a joint indictment against Boone Bowling, Anse Curtis, and Will Gellispie charging them with the murder of Taylor Spencer. On separate trial the jury returned a verdict of guilty against Boone Bowling and fixed his punishment at death. He is appealing from a judgment entered in conformity with the verdict.

It is first argued by counsel for appellant that the evidence is not sufficient to warrant or support the verdict of the jury.

Briefly stated, the evidence for the commonwealth is, in substance, that prior to the tragedy, appellant, Joe Combs, and Anse Curtis were at the home of Mary Coley. Taylor and Sam Combs were seen to pass, going, as we infer from the record, toward the place where the homicide occurred. Later, appellant, Mary Coley, Combs, and Curtis went in the same direction and into the home of Ode Lovins, where Taylor Spencer was sitting on the front porch. While there, appellant tried to procure some beer from Ode Lovins or his wife, but was told they had none. Some one present stated that Spencer had some beer, so he was called into the kitchen where the others were. He gave Bowling a bottle of beer, which was consumed by Bowling, Curtis, and Joe Combs. Evidence as to what happened at the Lovins home is more or less confused; however, it appears that something occurred to cause an apprehension of trouble. Taylor Spencer was seen to leave and cross the road to the home and store of "blind" Jessie Barnett, where he sat down on the porch. In a short time he was followed by appellant and Mary Coley. The Coley woman was trying to detain appellant, and was pleading with him "not to do that." When they got into the yard, Bowling asked deceased to come out, and, when he demurred and seemingly tried to evade appellant, the latter assured him that he would do him no harm and had nothing against him. Mary Coley and Joe Combs were trying to persuade appellant to leave the place with them. Joe Combs testified that deceased said, "I never done anything to Boone in my life; he never harmed him." To which Bowling replied, "I am not going to bother you." Deceased hesitated, but finally slowly stepped down from the porch

toward appellant, and, when he had taken two or three steps, the latter shot him. The first shot apparently took effect, as deceased was seen to bend forward, appellant then fired another shot, deceased jumped behind Mary Coley, a third shot was fired, and deceased grappled with appellant. Some time during the encounter Mary Coley received a shot in the shoulder. The evidence of Joe Combs is substantially corroborated by a number of other witnesses and by Jessie Barnett, who, although blind, heard the conversation of the parties and could judge of their movements and respective positions by their voices.

Not only is the verdict supported by the evidence, but the great weight of evidence conduces to show that Taylor Spencer was unarmed and that he made no threats or demonstrations whatever toward appellant, but was seeking to avoid a difficulty with him.

Appellant testified that he and the others left Mary Coley's together to go to the home of Joe Combs to get some clothing belonging to the Coley woman; that he had nothing against Taylor Spencer and was not purposely following him; that he and his codefendants had not talked about nor entered into any conspiracy against deceased; that, when they went into the Lovins home, deceased followed them in and said, "Ode you don't care what kind of s—— of — b—— you allow in your place do you?" Ode replied, "They are all my friends and good fellows." Whereupon he and Mary Coley started to leave and deceased followed them. However, they stepped into a room, and he went on out. About five minutes afterward he and his companions started to the home of Joe Combs. When they got out on the highway, they saw Jessie Barnett and Taylor Spencer sitting on Barnett's porch. He and Jessie exchanging greetings, and Mary said something to someone. Jessie then asked them why they did not come in, and he replied that they were going to Joe's and invited the others to join them. Taylor Spencer got up, left the porch, and said to him, "What is worrying you, you s—— of a b—— you are not going to get hurt for an hour yet." That he replied, "Taylor there is someone agitating trouble between you and I, I haven't anything against you." Deceased swore and said, "Why do you act like it," and made a rush at him, whereupon he shot into the ground, thinking perhaps

that would stop deceased, but by that time deceased had struck him under the eye with something and grabbed him; that he shot deceased, and, in the struggle that followed, shot again. Anse Curtis corroborated the statements of Bowling as to how the difficulty occurred, but testified that he did not hear what was said between the parties except that when Bowling was backing away from deceased he heard him say that he had nothing against him.

From the foregoing it will be seen that there is absolutely no merit in the contention that the verdict is flagrantly against the evidence, since it was within the province of the jury to accept and give credit to the statements of a number of disinterested witnesses introduced by the commonwealth, including an associate of appellant, to the exclusion of the evidence of appellant and his witnesses. Nelson v. Commonwealth, 232 Ky. 568, 24 S. W. (2d) 276.

It is further argued that the court erred in not granting a continuance. When the case was called for trial on July 20, 1932, appellant made a motion for continuance, and in support thereof filed his own affidavit. In the order noting the filing of same, it is referred to as an affidavit for continuance and for change of venue; however, it does not conform to the requirements of the statute (Ky. Stats., sec. 1109 et seq.), respecting application for change of venue and no argument is made as to the refusal of the court to grant such change. Counsel for appellant apparently treated it merely as an affidavit in support of a motion for continuance, and in the circumstances we shall so treat it here. In the affidavit it is stated, in substance, that within a few minutes after the homicide for which he was charged he was arrested and placed in jail, where he has continuously remained; that by reason of such confinement he has not had a chance or opportunity to investigate or ascertain who were present or near enough to see and hear what took place between him and deceased immediately prior to the shooting. He further stated that public mind in Breathitt county was highly inflamed against him because of the fact that several men were killed in the county on the day of the homicide and the day previous thereto, and that, if granted a continuance until the next term of court, public opinion would react and undergo a change in his

favor; that he had been informed by counsel that people generally had been discussing his case, and many of them said that he was guilty of willful murder and should be given the death penalty; that such expression had moulded public sentiment against him, and that his counsel, after diligent effort, had been unable to find two persons not related to him by blood or marriage in the county who would make necessary affidavits to support his application for change of venue; that he and two of his brothers had theretofore served terms in the penitentiary for murder, and that fact, in connection with existing conditions, would mitigate against him for a fair trial; that the fact that the McPherson woman (Mary Coley) was shot in the affray would have undue weight or influence with the jury under conditions existing at that term. The affidavit does not give the name of any witness who was present or heard or saw anything in connection with the difficulty whose presence he could not have secured at the trial, nor is it made to appear anywhere in the record that appellant was deprived of the evidence of any witness who knew anything material to his defense.

Some of the matters contained in the affidavit, if properly set forth by verified petition and supporting affidavits as required by the statute prescribing the manner in which application for change of venue may be made, might have been considered by the court on such application, but the alleged public sentiment and bias against appellant in Breathitt county does not constitute proper grounds for continuance. Laughlin v. Commonwealth, 37 S. W. 590, 18 Ky. Law Rep. 640; McKinzie v. Commonwealth, 193 Ky. 781, 237 S. W. 386.

It is a rule of universal application in this jurisdiction that the discretion of the trial judge in granting, or refusing to grant, a continuance, in the absence of a showing that such discretion has been abused, will not be interfered with by this court.

In the absence of any showing in the affidavit or in the record as a whole that appellant was deprived of the evidence of any material witness or was not as well prepared for trial as he would have been at a subsequent term of court, we must conclude that the court did not err in refusing a continuance. Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592; Vaughn v. Commonwealth, 204 Ky. 229, 263 S. W. 752.

70

Counsel makes some reference to improper statements of the commonwealth's attorney in his closing argument to the jury; however, he concedes that the alleged objectionable statements were not incorporated in the bill of exceptions or otherwise made to appear in the record, and therefore cannot be considered on appeal.

We might note in passing that it is pointed out in brief for the commonwealth that the record does not disclose that the court ruled on the motion for continuance or that appellant saved exception to the court's failure to so rule. It is insisted on behalf of the commonwealth that in such circumstances the failure to grant a continuance cannot be considered on appeal, and ample authority is cited in support of this argument; however, in view of the gravity of the case and the severity of the punishment, we have treated the question as though the court had ruled adverse to appellant and that proper exceptions were made to such ruling. Since a careful review of the record fails to reveal any error prejudicial to appellant's substantial rights, the judgment is affirmed.