## Hale v. Commonwealth.

(Decided May 21, 1937.)

(As Modified on Denial of Rehearing Oct. 8, 1937.)

744

CROSSLAND & CROSSLAND for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

The appellant, Joe Hale, upon separate trial under an indictment charging him and others of murdering W. R. Toon, was convicted, the jury by its verdict fixing his punishment at death. His motion for a new trial was overruled, and from that order and the judgment pronounced and entered upon the verdict he appeals, urging through his counsel a number of grounds as prejudicial errors, of sufficient materialty as is claimed to authorize a reversal of the judgment, each of which will be disposed of as the opinion proceeds. Perhaps the most substantial one, and which appears at the threshold of the case, is the alleged error of the

court in overruling appellant's motion (which motion is not in the record), made before the trial was begun, to quash the indictment against him, and in overruling a similar motion (which is in the record) to discharge the qualified panel of petit jurors after they were selected to pass on the issue of his guilt or innocence, which was made immediately after such qualification, the latter being based upon the same ground said to have been urged for the quashing of the indictment. That ground is a right claimed by appellant as one guaranteed to him by the provisions of the Fourteenth Amendment to the Constitution of the United States as interpreted and applied by the Supreme Court of the United States in the case of Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074, and others cited in that opinion, and followed in Patterson v. Alabama, 294 U. S. 600, 55 S. Ct. 575, 79 L. Ed. 1082.

The constitutional guaranty invoked in those cases, and which appellant attempted to invoke here, is formulated by the Supreme Court of the United States in the case of Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 689, 44 L. Ed. 839, thus:

> "Whenever by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States."

The inserted excerpt from that (Carter) case was quoted and approved by the Supreme Court in the opinion in the Norris case as being a correct statement of the constitutional principle therein involved, being the same, as we have stated, now invoked by appellant in this case. It will be noticed that, before the federal constitutional provision and guaranty is violated so as to mature the right of one to rely upon it, the exclusion of negroes from serving on either grand or petit juries, in the enforcement of the criminal laws of a state, must not only have been by a state through its Legislature or its courts, or its executive or administrative officers, but must have been made solely because of their race or color; but when so done, "the equal protection of the laws is denied to a member of that race who stands ac-

cused of violating the criminal laws." It therefore follows that, before the principle may be successfully invoked, the accused seeking shelter thereunder, must charge as a fact that members of his race were so excluded in some of the ways pointed out, and in addition thereto that it was done solely "because of their race or color." When such a motion is made, setting forth the outlined ground, and the charge is proven, then an occasion is created for the application of the principle enunciated in the Norris and cited cases.

It is stated in the Norris opinion, and others therein referred to and herein cited, in substance, that the charge or motion itself specifically set forth the elements necessary for the application of the principle, as we have pointed them out and as contained in the excerpt from the Carter opinion, supra, and that such charges, or expressly stated grounds, were proven and established by the evidence heard on the trial of the motion. We construe those opinions to require not merely proof of the facts necessary to create the charge, but that such proof must be preceded by a like statement of the facts creating the right to invoke the principle, and which latter is analogous to the universal requirement of a pleading that it set forth the facts relied on, before evidence to prove the facts can become effective, although sufficient to establish the necessary ground if facts had been stated in the motion, or in some affidavit or other supporting document.

To begin with, it is not stated in this case, either in the motion which appears in the record, or in appellant's affidavit in support thereof, or elsewhere in the entire application procedure, that appellant was a member of the African race, although the court no doubt by observation knew that fact to be true. That omission is however, a technical one upon which we would not be inclined to hinge our opinion, even were we authorized to do so. But a more serious defect in the application noticeable in the motion to obtain the relief sought, is the failure of appellant in the motion or charges filed, or in his affidavit filed in support thereof, to state or make the specific grounds the basis or foundation for his motion. He set forth in his affidavit that he could prove by the present sheriff, and a number of his predecessors, going back as far as 1906, that during the entire period no member of the African race had been summoned or served on a grand or a petit jury in Mc-

Cracken county. He also stated therein that he could prove the same facts by all of the circuit clerks of the McCracken circuit court throughout the same period. He likewise named a number of witnesses, consist'ng of attorneys at the bar, court stenographers, and others, whose professional duties called them into intimate relation with the proceedings of the McCracken circuit court, including the judge presiding at the trial, and stated that all of them would make similar statements.

It can, therefore, not be denied or questioned but that such proof, uncontradicted, would tend to establish all of the elements calling for the application of the invoked principle, and which character of proof is expressly approved in the Norris opinion; for in that case almost identical proof in support of the motion of the accused was adduced.

After naming the witnesses by whom such facts could be established, appellant further stated that such testimony, "is true and will be true when proven." But it will be perceived that the quoted statement is only a verification of the truth of the testimony by which appellant proposed to establish the grounds of his motion, provided it sufficiently charged those grounds to allow the reception of that testimony. Further along in his affidavit appellant says that, "the foregoing facts, when proved, show a long continued, unvarying and wholesale exclusion of negroes from jury service in this county on account of their race and color; that it has been systematic and arbitrary on the part of the officers and commissioners who select the names for jury service, for a period of fifty years or longer." That excerpt is clearly but an appraisement of the weight to be given testimony that appellant intended to introduce in support of his motion. In other words it was in effect a statement by him that "when I shall have introduced that testimony it will be sufficient to show the facts," which he should have, but did not, set forth in his motion. When we examine that motion we find that all that it contains is this:

"Came defendant, Joe Hale, by attorney, and filed motion and moved the court to set aside the indictment in the above styled prosecution, and in support of said motion to set aside, filed his own affidavit and his supplemental affidavit."

The order then recited that the parties filed their stipu-

lation to the effect that the witnesses named in appellant's affidavits would testify to the matters and things which that stated in said affidavits. The court overruled the motion to quash the indictment and later overruled the one to discharge the trial panel, based upon the same affidavit.

Looking to the affidavit as supplementing the motion as above inserted, it will be found that it nowhere states the necessary elements for the application of the invoked principle, in that there is an entire failure to charge therein as grounds therefor, that such exclusion of members of the African race from service on juries was superinduced and occurred "solely because they were members" of that race.

We therefore have a case where the proof might be regarded as sufficient to sustain the ground upon which the motion was evidently made, but there is wanting in the record a sufficient statement of those grounds to permit the introduction of that proof. The failure so pointed out is analogous, as we conclude, to a case where there is proof without pleading, and the rule is that "pleading without proof or proof without pleading" are each unavailable. Suppose that we were dealing with a motion for change of venue instead of one to quash the indictment or to discharge the trial panel, the two latter accomplishments being the objectives sought in this case, the movant for such change must set forth in his motion the statutory grounds entitling him to that relief, and before he can obtain it he must support those charges by sufficient proof. It certainly could not be held sufficient for him to embody in his motion something like this: "The defendant moves for a change of venue of this prosecution to some other county," and no more. He is required, before he is even permitted to introduce proof, to make a prior charge of facts entitling him to a change of venue. We think no one would dispute the correctness of our illustration with reference to a removal of the trial to another court, and we are unable to see any distinction between what is required in such a motion and what should be required in motions like these under consideration. Other persuasive and confirmatory illustrations might be made, but which we deem unnecessary.

We could attach a long list of cases from both federal and state courts approving the declared principle

as stated in the Carter opinion, supra, and reaffirmed in the Norris opinion by the same court, if it were necessary; but, since the principle as so declared is admitted and adhered to by all courts, we deem it unnecessary to lengthen this opinion by an additional list of pertinent cases.

We therefore conclude, for the reasons stated, that the court properly overruled both the motion to quash the indictment and the one to discharge the trial panel, and for which reason this ground is disallowed, and which brings us to the consideration of the other grounds relied on relating to the merits of the case.

The homicide occurred in Paducah around 11 p. m., August 18, 1935. The deceased, an employee of a railroad company, was forty years of age. He had attended a picnic at Twenty-Eighth and Kentucky avenue in Paducah on the night in question, and was seen at the grounds as late as 10 o'clock. About 11 o'clock a car was observed to strike a telephone pole at Tenth and Kentucky streets. Persons making investigation (one of them a fellow-employee) found deceased slumped under his steering wheel, semiconscious and bleeding profusely. Police aid was promptly secured, and the injured man was hurriedly removed to a hospital. Examination by a physician developed that he had received three definite stab wounds, one in his left thigh, one in the chest, the third in the left arm, the latter almost severing an artery. A physician says that the thrust in the arm, causing excessive hemorrhage, was the fatal wound. The injured man died within an hour and a half after the wounds had been inflicted.

On the night of the homicide appellant had been visiting a friend, Mae Hamilton, at the home of her sister Eugenia, at 727 Jackson street. While there a white man was seen to pass the house. Later Eugenia came to the porch where appellant and her sister were sitting, and related that on the way to a neighbor's and on her return, a white man had spoken to her. She remarked, "I wonder who he is, he spoke to me twice." The man who had spoken to her went to the corner, stood a few minutes, got into a car, and spoke to another colored woman. Appellant then remarked, "That is the man who has been stopping colored women and asking them to get in his car; I know his car."

The occupant of the car then came down Jackson

to Eighth and turned into that street, disappearing from view just long enough to drive around the block, came back again, parked at the corner for a few moments, and again drove out of sight of the parties at Eugenia's home. After the car had disappeared the second time appellant got up and went up Jackson street to Seventh, and turned down that street. In a short time he came back to Eugenia's home and said: "That man went up on Ohio Street and parked in the dark and I gigged him a time or two and told him to quit stopping these colored women." Eugenia asked, "Did you hurt him," and he said, "No, I just gigged him a little."

Thorpe, a witness, relates that on the night in question he saw a car parked near Seventh and Jackson, where it remained a few moments, and then went toward Adams street. Appellant and James Martin came hurriedly up Jackson toward Seventh. Witness followed, overtaking them at Seventh and Ohio. Martin said: "Is that the car that was down at 7th and Jackson?" and witness answered, "yes." Thorpe walked up to the car parked near the corner, asked the driver if he was looking for some one, and the driver replied, "I am looking for Jim Powell." He was told by witness that Powell lived at Seventh and Jones streets. Just at this time appellant went to the other side of the car and said, " 'I seen you on the corner a while ago talking to a colored woman,' and this man answered, 'Yes, I was asking for some information,' and then Joe Hale opened the car door and began cutting him." The driver of the car "hollered" and started his car toward Sixth street, finally driving to Kentucky avenue, thence to Tenth, where his failure to observe a stop light, and his continued driving to the left side of the street, attracted the attention of persons who saw the car run into a telephone pole. What then occurred has been related.

The appellant did not testify, nor was there any effective testimony introduced in his behalf; such as it was, it neither undertook to, nor did in anywise, overcome the proof that appellant had stabbed and fatally wounded deceased.

On this appeal, the grounds presented in support of appellant's contention that a reversal should be ordered, in addition to the one above discussed, are:

(1) The venue of the offense, though properly laid

in the indictment, was not fixed by proof, there being no evidence showing that the act of injury was committed in McCracken county.

(2.) Material and competent evidence offered by appellant and rejected by the court's erroneous ruling.

Taking up ground No. 1, we observe from the proof that it is not stated by any witness in so many words, that the stabbing occurred in McCracken county. There is an abundance of evidence establishing the fact that the act occurred in Paducah. Section 18 of the Criminal Code of Practice limits the jurisdiction of circuit courts of trials in criminal cases to offenses committed in the respective counties in which they are held. It is necessary to bring to the court and the jury such facts as will justify the court and the jury in concluding that the offense was local. In this case the deceased was seen at a picnic in Paducah on the night of the injury a short time before he was fatally stabbed. Deceased had been working in the railroad shops, and lived "all his life," in Paducah. City policemen testified as did others, as to points, places, and occurrences of the night, all in Paducah. He was attended by a Paducah physician in a Paducah hospital where he died.

Counsel is of the impression that because the witness who saw the stabbing, localized it at "Seventh and Ohio," there is failure of jurisdictional proof. We cannot agree with this contention, in view of the fact that we have so frequently held that a failure to name the county is not necessarily a failure to prove the locus, if there be sufficient proof of facts and circumstances from which the jurisdiction may be reasonably inferred. In this case the trial court could, and no doubt did, take judicial knowledge that Paducah was and is the county seat of McCracken county. While the jury might not be presumed to know the location of "Seventh and Ohio," from the proof introduced, they, being reasonably intelligent, had no difficulty in concluding that the occurrence took place in Paducah, and with some attributable knowledge of local geography, knew that Paducah was in McCracken county.

Counsel relies on Wilkey v. Com., 104 Ky. 325, 47 S. W. 219, 220, 20 Ky. Law Rep. 578, where the sole jurisdictional proof was that the crime was committed in " 'Rhea's wheat field,' about 400 yards distant from the residence of Joe Tyre." That case and others, re-

versed for lack of proof on this particular point, are reviewed and distinguished in the more recent case of Nelson v. Com., 232 Ky. 568, 24 S. W. (2d) 276. A casual reading of the Nelson Case, which cites a number of others to like effect, clearly demonstrates that in the case at bar the proof was fully sufficient to take the case to the jury, and we might add as being conclusive, Stubblefield v. Com., 197 Ky. 218, 246 S. W. 444; Fletcher v. Com., 210 Ky. 71, 275 S. W. 22; Slone v. Com., 246 Ky. 853, 55 S. W. (2d) 1113.

Appellant introduced two colored women who lived in the neighborhood of 718 Jackson street, one of whom stated that a man whom she did not know, but who looked to be about the size of the brother of deceased, had accosted her on the street several times. The other witness said that some time prior to the homicide "some man" who had a nice looking car, called to her. The court properly excluded the foregoing offered testimony, manifestly because it did not in anywise identify deceased as being the man who had accosted them or either of them. It was not shown that appellant knew of these detailed circumstances, or either of them. The proof was neither competent nor relevant. The court did not err in its exclusion.

We are presented with a case where the accused was proven guilty of the crime of murder, as charged in the indictment. The proof was clear and convincing. No excuse for the crime is shown. The appellant did not testify; he offered nothing in the way of proof which served to excuse his offense. The court was careful to give every instruction which should rightfully have been given. His rulings in every respect were fair. We have given the record the closest scrutiny, and, finding no error prejudicial to the substantial rights of the accused we conclude the judgment must be, and it is affirmed.

The whole court sitting.

Clay, Rees, and Stites, J., dissenting.