## Childers v. Commonwealth.

Sept. 29, 1939.

Chas. L. Seale, Judge.

George Hogan and Grannis Bach for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On October 2, 1938, appellant shot and wounded one Brown Jewell, the encounter taking place at a church in Lee County. His indictment followed, and upon trial he was found guilty, the jury imposing two years' imprisonment, the minimum under Section 1166, Kentucky Statutes, which denounces the offense.

He prosecutes appeal, contending that the verdict was flagrantly against the evidence, and that the court erred to his prejudice in giving instruction No. 1, because, as counsel says, "the proof failed to show that the shooting was done with malice."

On the day of the shooting Jewell had ridden a mule to the church grounds, arriving as he says about 10:30. Witnesses say he was intoxicated to a degree. He walked into the church house, but did not remain. He had hitched his mule up on a bank about thirty yards from the highway, and about the same distance from the church grounds. Along about 1:30 P. M. he decided to leave and pointed his mule out to appellant, who went to bring it to him. There is quite a discrepancy in the testimony as to the moving cause of Childer's going for the mule. Jewell says Childers got the mule for the purpose of going for more moonshine. Childers says that Jewell was drunk, and he went to get the mule as a matter of accommodation to Jewell. However this may be, when Childers returned with the mule Jewell asked him to get off, and he at first refused; he asked him again; Childers alighted, Jewell mounted, Childers saying: "You need not be so damned smart about it." Jewell says that Childers "cursed me and the mule, and got in front of me and shot me." One bullet struck Jewell in the left side about the waist-line, penetrating the body; one shot struck the mule, and a third went through Jewell's coat without injuring him. Jewell said that he and appellant had never met before, and that he had taken a "drink or two" that morning.

Several witnesses for the commonwealth, some who were inside and others outside the church, bear out

Jewell's testimony that Childers shot at him once or twice before Jewell returned the fire, which he admits he did, though insisting that he did not shoot at Childers until after Childers had shot him. Childers testified that he was a stranger to Jewell, and says that at the time of the shooting he was sober and Jewell was drunk; that he did not go into the church, seeing that it was crowded, but remained on the grounds until about 1:30, when Jewell pointed out his mule to him and asked him to bring it to him. He says he did so, and when he got back to the point in the highway where Jewell was, the latter said: "G. D. it, get off there." Appellant replied, "Don't get so crabbed about it," and got down from the mule and Jewell mounted. Some other words similar to those quoted were passed, and appellant says he heard Kilborn, a witness, say, "Don't do that Brown," and "I looked and he had a pistol pointed in my direction." Appellant says he backed away and said:

> "Brown don't do that; don't get so smart, don't get so crabbed. I ducked out of the way and he jerked his pistol, and I fired three quick shots right that way (indicating) after he had fired at my head."

Appellant admits that when he started to church in the morning, he carried his .45 automatic, and says that when Jewell cursed him it did not "necessarily" make him mad. Only one other witness appears to have been near enough to appellant and Jewell at the time of the shooting to hear and see what took place. Four or five others, some inside, others outside the church, heard and saw parts of the encounter. The witnesses corroborate appellant in his version of the shooting.

Kilborn, who was near the parties, said he saw Childers bring the mule back, Jewell get on it and witness called to Jewell and asked him if he didn't want to go home; that appellant "looked like he had a pistol in his hand," and the shooting began immediately. Witness says that when Childers drew his pistol he did not think that Jewell had his pistol drawn. He said:

> "Childers was kind of lent over, and came out with his pistol and shot, and then Brown fired. The first shot, Brown had his head down, and his hand was down at his side when he was shot."

He was quite positive that appellant fired the first shot.

Appellant's counsel argues that the verdict is fla-

grantly against the evidence, and was the result of passion and prejudice. It is true, as contended, that the greater number of witnesses testified favorably for defendant, all to the effect that there was no difficulty prior to the shooting, and some that Jewell fired the first shot. It is also true that some of the witnesses for the commonwealth were not near enough to the scene of the difficulty to hear what was said, nor to closely observe the movements. However, it is likewise true that those witnesses who did see from a short distance were positive in their statements that appellant fired the initial shot.

This is one of that class of cases which frequently come before us, wherein the evidence is sharply conflicting. Numerically the appellant has the better of the argument, but since counsel was unable to convince the jury that his version of the encounter was the correct one, we are powerless to interfere, merely on the ground that a greater number of witnesses testified favorably to appellant's version, or because they were in a better position to see what occurred.

This is not a case, as we view it, wherein the evidence was such as to induce the belief in the mind of the court that appellant's conviction resulted from passion or prejudice on the part of the jury. The verdict, carrying as it did the minimum penalty under the statute, was not such as to shock the conscience of the court. Partin & Allen v. Com., 197 Ky. 840, 248 S. W. 489.

A careful reading of the evidence convinces us that there was not only sufficient evidence to pass the case to the jury, but that the commonwealth introduced witnesses who were unimpeached and who testified positively that appellant first fired at Jewell. In such state of case, the matter of measuring the quality and weight of the evidence became one peculiarly for the jury's consideration and determination. We have held that the evidence of one witness may be taken as against the testimony of many. Ely v. Com., 239 Ky. 638, 40 S. W. (2d) 276; Alsept v. Com., 240 Ky. 395, 42 S. W. (2d) 517. Where the evidence is conflicting a jury is not bound by a preponderating number of witnesses or testimony. Newsome v. Com., 240 Ky. 333, 42 S. W. (2d) 306; Bowling v. Com., 247 Ky. 65, 56 S. W. (2d) 723; Bullock v. Com., 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407.

Counsel's final objection is that the court committed prejudicial error in giving instruction No. 1, because the evidence is barren of any facts showing malice on the part of appellant. Counsel does not challenge other instructions given by the court; he agrees that those given on shooting in sudden affray, self-defense, and the usual doubt instructions were correct in form and substance, but that since there was no showing of malice toward Jewell, the court should not have given No. 1, which as we observe, followed the language of the statute under which the indictment was drawn.

It is true that we have held that in a prosecution under Section 1166, Kentucky Statutes, malice is one of the essential elements, and without that element the shooting and wounding of one person by another may be classed as a misdemeanor punishable under Section 1242, Kentucky Statutes. We have also defined "malice" in its legal sense as being the intentional doing of a wrongful act toward another without legal justification or excuse. It may be implied or inferred from any cruel or injurious act, and it is not required that malice in esse be proven. In fact, it would be extremely difficult in many cases to prove previous malice. Brown v. Com., 226 Ky. 255, 10 S. W. (2d) 820.

> "This essential ingredient may be expressed or implied from the proven circumstances. It is a stereotyped expression in the form of instruction that the phrase 'malice aforethought' means a predetermination to do the act * * * without legal excuse, and it is immaterial how suddenly or recently * * * such determination was formed." McHargue v. Com., 231 Ky. 82, 21 S. W. (2d) 115, 117.

In Patton v. Com., 235 Ky. 845, 32 S. W. (2d) 405, 407, the same contention was made as to an instruction which embraced the element of malice, and we said in answer to the objection:

> "The subject has been elaborated so often that further repetition is not necessary. Malice may be inferred from the circumstances, and the * * * use of deadly weapons warrants an inference of malice, imposing upon the defendant the burden of excusing his act."

Here it is evident that appellant's only excuse in

shooting at Jewell was that he, Jewell, opened fire on him. A clear case of self-defense if the jury had accepted the testimony of accused and his witnesses. As we read the proof, and particularly the testimony of accused, it may readily be seen that since he, as is claimed by him, was doing an act of accommodation in getting Jewell's mule for him, and Jewell berating him, he became so incensed that he then and there formed the intent to do Jewell harm. At least we have no difficulty in concluding that from appellant's proof, the jury took the position that he was not acting in self-defense.

While there is no complaint of other instructions given, we have nevertheless looked them over and find that the court properly safeguarded appellant's rights in giving instructions which, had the jury seen fit to follow, would have authorized it to inflict a lesser degree of punishment, or freed him of culpability. The whole record has been read with care, and we find nothing to indicate that appellant was not accorded a fair and impartial trial. This being so, in accord with our fixed rule in such cases, we must decline to disturb the verdict and consequent judgment.

Judgment affirmed.