**Jake HARTMAN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 17, 1955.

Rehearing Denied Oct. 7, 1955.

Richard H. Nash, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

HOGG, Judge.

Appellant, Jake Hartman, was jointly indicted with John Doe and Richard Roe in the Bullitt Circuit Court for armed robbery, a crime denounced by KRS 433.140. Upon his separate trial, appellant was convicted and his punishment fixed at confinement in the penitentiary for and during his natural life.

He seeks a reversal of the judgment upon the following grounds: (1) He was entitled to a directed verdict of not guilty; (2) having been indicted for armed robbery with no accusation that he was an aider or abettor or accomplice, he should not have been tried on the charge of being an aider or abettor, and, therefore, the instruction given authorizing his conviction as an aider and abettor was unwarranted, and (3) refusal of the trial court to permit him to introduce competent testimony in his behalf.

Appellant's defense was an alibi. He introduced a number of witnesses who testified, in corroboration, that he was in Louisville the entire night on the night of the robbery, which took place in Bullitt county.

So that we may properly evaluate two of these alleged errors, it will be necessary to give a résumé of the Commonwealth's evidence, in particular. Two elderly people, Charlie Clark and Marcia Smith, lived in the same house in a rural section of Bullitt county. At about 7:30 p. m. on Tuesday night, January 12, 1954, two men, whom they did not know, came to their home and with the use of deadly weapons assaulted and robbed them of about $900 in money, included in which was a glass jar containing ten-cent pieces (dimes) aggregating $30. The robbers were in the home per-

petrating this crime until about 10 p. m. They wore masks. Each had a knife which he displayed in accomplishing the robbery. In divers ways they threatened to kill these old people. One of them seized Clark by the throat and roughed him up. One of them procured a pistol in the home during the course of the robbery and fired it into the back of a rocking chair situated in the room. The victims were tied up during the course of the robbery; the robbers cut open a feather bed and pillow case, and a large quantity of feathers were spilled over the floor.

The home of the victims was at the end of the lane which led from the Zoneton Highway, a distance of some two or three hundred yards. While the robbery was taking place, the robbers, between them, made two or three trips out of the house and on each trip were gone about long enough to go down to the highway and back to the house. The morning after the robbery shoe tracks were discovered in the lane from the Zoneton Highway to the house, to and fro.

After hearing of the robbery the next day, Rufus Gentry, who resided on the Zoneton Highway, reported to the sheriff that the night before he had seen appellant in an automobile on the Zoneton Highway a few hundred yards from the home of the victims of the robbery. The appellant was arrested. He denied having taken part in the robbery. At first he denied having converted any dimes into other forms of cash. He later admitted that he cashed $4 in dimes at the 626 Bar in Louisville, which dimes he said he got from his own home.

The morning after the robbery detective Rucker came to the scene; snow was on the ground; tracks of an automobile were in evidence; the tracks of the automobile showed that the car had turned around about two or three hundred yards east of the lane which lead from the Zoneton Highway to the home of the victims. This witness testified that the tread of the tires which made the tracks was similar to the tread on the automobile tires belonging to appellant. When the detective searched the car of appellant on Friday night after the robbery he found two feathers in the back of the automobile, close to the rear seat.

The sheriff of Bullitt county testified that the morning after the robbery he went on the scene and found shoe tracks leading to and from the highway, up the lane, to and from the house. Other parts of his testimony corroborated Rucker.

Harvey Hodge, who lived on the Zoneton Highway some two or three hundred yards from the home of the victims, testified that the morning after the robbery Mrs. Smith came to his home to place a call over the telephone concerning the robbery. He further testified that the night before he had observed an automobile passing up and down the road in front of his lane, and toward the lane that turned off the Zoneton Highway leading toward the home of the victims. The car was going up and down the road every few minutes at a very slow pace. In his judgment it made seven or eight trips. The last time he saw the car was at about 9 p. m. when he went to bed.

Rufus Gentry, who lived on the Zoneton Highway three or four miles from where the victims lived, testified that he knew appellant very well and that appellant owned a 1949 Mercury automobile; that on the night of the robbery, at about 7 p. m., he, with his daughter, went from his home to Shepherdsville to attend a basketball game. As he went toward Shepherdsville he passed an automobile at the gate of Mr. Hodges, who lived two or three hundred yards from the home of the victims. After the ball game was over he drove back home and left Shepherdsville about 10 o'clock. On his return trip he observed an automobile near the entrance of the lane which led from the highway to the home of the victims. It was a 1949 Mercury and appellant was driving it. He further testified that the 1949 Mercury was located and resting at the entrance of the lane which led to the home of the victims; that the lights on the car were not on when he first saw it, but that when he got within 15 or 20 feet of the automobile it started moving;

that he, Gentry, threw his lights on the passing automobile and unmistakably identified appellant as the driver of the car.

Shirley Ann Gentry, the 15-year-old daughter of Rufus, corroborated her father as to seeing the car as she went to Shepherdsville and returned, but she did not know who was driving the car.

Samuel Estes, the bartender at the 626 Bar, testified that on the day after the robbery, to wit, January 13, 1954, the appellant was in the bar at about 7 or 8 o'clock —either in the morning or at night, the evidence does not indicate—and he converted at the instance of appellant $13 worth of dimes into folding money. Appellant had this amount of dimes loose in his pocket.

It is the rule in this state that where there is any evidence of a probative character, direct or circumstantial, tending to establish guilt, the jury should determine its weight as bearing on the guilt or innocence of the accused. Utterback v. Commonwealth, 190 Ky. 138, 226 S.W. 1065; Nelson v. Commonwealth, 232 Ky. 568, 24 S.W.2d 276.

It seems to us that the evidence in this case was sufficient to justify its submission to the jury, under proper instructions, on the question whether the appellant was guilty of being an aider and abettor in the commission of the crime of armed robbery. Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different conclusions, the case should go to the jury.

The appellant argues that since there is no proof that he was actually present at the home during the robbery, he could not be convicted as an aider and abettor. We have many times held that in order to constitute one an aider and abettor it is not necessary to go so far as to show that he was *actually* present at the time the crime was committed and took a part therein, but that one may be convicted if it is shown that he was constructively present at the time of its commission and participated in some way in the crime committed.

A careful consideration of all the evidence in this case, and the legitimate inferences to be drawn therefrom, leads us to believe that the evidence of guilt of appellant as an aider and abettor went beyond mere suspicion, and was consistent with his guilt and inconsistent with his innocence. Brown v. Commonwealth, Ky., 275 S.W.2d 928.

Ground (2) is entirely without merit. We have held in a number of cases that where the indictment names two or more persons as the perpetrators of a crime, either one may be convicted as an aider and abettor of the other in the commission of the crime. Bailey v. Commonwealth, 295 Ky. 441, 174 S.W.2d 719; McKinney v. Commonwealth, 284 Ky. 16, 143 S.W.2d 745. See also, KRS 431.160. The instructions given by the court below authorized only a conviction of the appellant as an aider and abettor. The instructions were proper.

Coming now to ground (3), which appellant relies upon, we have examined the testimony which appellant sought to introduce and which the trial court refused to permit to be introduced, and have come to the conclusion that it had no bearing and could throw no light upon the question of the guilt or innocence of the appellant.

Finding no error in this record which could be considered prejudicial to the appellant's substantial rights, the judgment is affirmed.